BANK OF NEW ENGLAND, N.A., trustee, *vs.*
ALICE W. MCKENNAN & others.

Norfolk. March 12, 1985. — April 22, 1985.

Present: GREANEY, C.J., ROSE, & BROWN, JJ.

*Devise and Legacy,* Issue, Determination of class, Per stirpes.

The phrase "my issue then living, according to the stocks" (per stirpes),
when applied to the distribution of the principal of a testamentary trust
on the death of the testator's last surviving child, called for the stocks
to be the three children of the testator, rather than his nine grandchildren,
where, if the grandchildren were treated as the stocks, the quoted lan-
guage would have added nothing to the scheme of distribution mandated
by statute; where treatment of the children as the stocks was consistent
with the trustee's unchallenged action over many years in distributing
the income under provisions of the trust containing the same language;
and where the will as a whole manifested no intention to single out the
testator's grandchildren as deserving of equal or special treatment.
[688-691]

PETITION for distribution filed in the Norfolk Division of
the Probate and Family Court Department on October 6, 1983.

The case was heard by *Edmund V. Keville,* J.

*John O. Mirick* for Arthur C. Thomson, Jr., & others.

*Steven H. Grindle* for Alice W. McKennan & others.

GREANEY, C.J. This is an appeal from a judgment of a
Probate Court ordering final distribution of the trust estate of
Arthur C. Thomson. The judgment was entered on a complaint
for instructions as to the distribution of the trust estate brought
by the remaining trustee, Bank of New England, N.A.

Arthur C. Thomson (the testator) was born on March 19,
1860, and died a resident of Brookline on May 22, 1927. His
will, executed on November 12, 1926, was admitted to probate
on July 13, 1927. Article Seven of the will created a trust and
read as follows:

"All the RESIDUE of my estate, both real and personal, and whether situated within or without Massachusetts, including any property over which at my death I may have a power of testamentary appointment, I give to The New England Trust Company [now the Bank of New England, N.A.] and my son-in-law Orrin G. Wood, . . . to hold the same . . . upon TRUST, and, from the time of my death, to pay the net income of the trust property quarter-yearly to my said wife, Lillian C. Thomson, during her life, and after the death of my said wife to pay the net income of the trust property quarter-yearly to my issue living on the quarterly payment days, respectively, according to the stocks, until the death of that one of my children that lives the longest, and, on the death of that one of my children that lives the longest, to transfer the capital of the trust property to my issue then living, according to the stocks, in fee simple and absolutely."

Another provision of the will states that the term "children" is to be "construed to mean lineal descendants in the first degree," and that the term "issue" is "to mean lineal descendants to the remotest degree (including children)."

The testator was survived by his wife Lillian, his three children, Eliot C. Thomson, Cecile T. Wood, and Marian T. Faulkner, and nine grandchildren: one the child of Eliot, six the children of Cecile, and two the children of Marian. Until Lillian's death in 1934, the income from the trust was paid to her as directed by Article Seven. After her death the income was paid in equal shares to the three children and on the death of Eliot in 1957 and Cecile in 1963, respectively per stirpes to their issue. In 1983, upon the death of Marian, the longest living of the children, the bank, as the remaining trustee of the estate, brought a complaint in the Probate Court for instructions as to the distribution of the balance of the trust estate, which was then valued at about $2,800,000. At that time, all of the testator's grandchildren were alive, except for one son of Cecile, Arthur T. Wood, who was survived by four children (great-grandchildren of the testator).

The trustee construed the "according to the stocks"[1] language in the last line of Article Seven as calling for a distribution on a per stirpes basis with the testator's children constituting the stirpes. This would result in a distribution as follows: one third to the child of Eliot, one sixth to each of the two children of Marian, one eighteenth so each of the five surviving children of Cecile, and one seventy-second to each of the four children of Cecile's deceased son. This construction was supported by the children of Eliot and Marian (the Thomson-Faulkner branch). Not surprisingly, it was opposed by Cecile's children and grandchildren (the Wood branch). They argued that the estate should be distributed on a per stirpes basis with the grandchildren constituting the stirpes in the following manner: one ninth to each of the eight living grandchildren and one thirty-sixth to each of the four children of the deceased grandchild, Arthur. The probate judge agreed with the construction of the will suggested by the Wood branch. The Thomson-Faulkner branch has appealed.

There is only one issue: whether the phrase "according to the stocks" in the last sentence of Article Seven, when applied to the distribution of the trust principal to the testator's "issue then living," calls for the stocks to be the three children of the testator, as the Thomson-Faulkner branch contends, or to be the nine grandchildren of the testator, as the Wood branch contends.

Had the will not included the phrase "according to the stocks," the estate would have passed in accordance with the Massachusetts statute of descent and distribution, G. L. c. 190, § 2 and § 3. See *Ernst* v. *Rivers*, 233 Mass. 9, 14 (1919); *New England Trust Co.* v. *McAleer,* 344 Mass. 107, 111 (1962); *Merrimack Valley Natl. Bank* v. *Grant*, 353 Mass. 145, 148 (1967). See also Newhall, Settlement of Estates §§ 219, 222 & 355 (1958); Simes, Future Interest § 106 (2d ed. 1966); Restatement of Property § 303 comment (f) (1940).

---

[1] The phrase "according to the stocks" is synonymous with "per stirpes". See *Theopold* v. *Sears*, 357 Mass. 460, 463 (1970); Newhall, Settlement of Estates § 222 (4th ed. 1958); 4 Page, Wills § 36.6, at 556 (Bowe-Parker rev. 1961).

This statute would have provided for the scheme of distribution sought by the Wood branch by making the oldest generation with survivors (the testator's grandchildren) the stocks. However, as with other disputes over the meaning of the language of a will, the determinative factor is the intention of the testator, as disclosed in the context of the will as a whole and the circumstances of the will's execution. See *Cammann* v. *Abbe*, 258 Mass. 427, 429 (1927); *Boston Safe Deposit & Trust Co.* v. *Park*, 307 Mass. 255, 259 (1940). Distribution according to G. L. c. 190, § 2 and § 3, is, of course, applicable only when no contrary distribution has been provided by the testator. See *Ernst* v. *Rivers, supra; Merrimack Valley Natl. Bank* v. *Grant, supra.*

Here the language of the will indicates that the testator wanted a scheme of distribution which looked to his children as the stocks. First, the testator employed the clear language "according to the stocks" in the will. It is a cardinal rule in will construction cases that all the language in the will is to be given effect, if at all possible. See *McLaughlin* v. *Greene*, 198 Mass. 153 (1908); *Loring* v. *Cotter*, 339 Mass. 689 (1959). Since the Massachusetts statute of descent and distribution, G. L. c. 190, § 2 and § 3, has been in effect in virtually the same form for a considerable period of time, the words "according to the stocks" would have no meaning if we were to adopt the interpretation urged by the Wood branch because those words would have added nothing to the per capita scheme of distribution mandated by the statute. Such a construction would also require us to conclude that the testator and the drafter of his will were ignorant of the law of Massachusetts and of the settled meaning of the words "according to the stocks." Such a conclusion is disfavored. See *Siders* v. *Siders*, 169 Mass. 523, 524 (1897); *Proctor* v. *Lacy*, 263 Mass. 1, 9 (1928).

Second, the testator used the phrase "according to the stocks" in Article Seven in a context where it is clear that his children rather than grandchildren were to be considered as the stocks. In that part of Article Seven which provides that the income of the trust after the death of the testator's wife is to be paid to

"my issue living on the quarterly payment days . . . according to the stocks," the testator provided for an income distribution by which the grandchildren took only proportional shares of what their individual parents had, rather than equal shares. Eliot's one child received all of Eliot's share of income upon Eliot's death, and Cecile's six children each received one sixth of her share of income upon Cecile's death. This distribution continued undisputed by any of the family members in over fifty trust accounts presented to the Probate Court until Marian's death in 1983. Because the same words or phrases appearing in different parts of a will are presumed to have been used with the same meaning, unless there is something indicating that the testator intended to use them in a different sense, see *Boston Safe Deposit & Trust Co.* v. *Park*, 307 Mass. at 258; *Agricultural Natl. Bk.* v. *Schwartz*, 325 Mass. 443, 448 (1950), we are drawn to the result that in Article Seven "my issue . . . according to the stocks" refers to the testator's children as the stocks.

Third, the will as a whole manifests no intention to single out the testator's grandchildren as deserving of equal or special treatment. Indeed, Article Seven does not even mention the grandchildren individually or as a class. Rather, it expresses itself solely in terms of the testator's "issue," who are to receive both the income of the trust while at least one of the testator's children is alive and the principal of the trust upon the death of the last child.[2] Nor is the term "issue" restricted to grandchildren. To the contrary, by definition in the will, the term includes both "children" and all "lineal descendants to the remotest degree." In view of the testator's omission of any express reference to his grandchildren, which would have been easy to provide had it been desired, it can be inferred that the testator was concerned, not with providing specifically for

---

[2] The consistency within Article Seven is highlighted by special bequests elsewhere in the will by means of which the testator treated several of his children and grandchildren differently from others by gifts of money and personal property.

them, but for his "issue" as a whole, according to the stocks from which they came, i.e., his children.[3]

We thus conclude that the language of the will brings Article Seven within the rule stated in *Bradlee* v. *Converse*, 318 Mass. 117 (1945). There, the testator left the principal of his trust estate per stirpes to nieces and nephews and their issue. It was said in that decision (per Lummus, J.), that "there is no reason in principle why in a gift per stirpes the stocks may not be found among the ancestors of the takers instead of among the takers themselves. All depends upon the intent as shown by the words of the will. . . . [W]here a gift is made to a number of persons of different stocks, per stirpes and not per capita, it is manifest that the stocks must be found in their ancestors." *Id.* at 120. The takers under the will here, as in *Bradlee*, are of two different generations — grandchildren and great-grand-children.[4] "The only way in which [the grandchildren] could take by right of representation [is] by finding the stirpes in the [children]." *Ibid.*[5] That is the situation in this case.

---

[3] Since only the word "issue" was used by the testator in defining the class of takers, it is reasonable to assume, in view of the ages of the testator's children at the time of the will's execution and the fact that he had many living grandchildren, that the testator contemplated that more than two generations would share in the distribution of principal.

The contention of the Wood branch that the testator was emotionally more attached to the children of Cecile than to his other grandchildren and, therefore, would not have wanted to discriminate against Cecile's children is not supported in the record. All the stipulated facts show is that the Wood family lived in the same town as the testator and that the testator chose Cecile's husband as one of the trustees. We do not view these considerations as sufficient to sustain the construction given the disputed language in Article Seven by the Probate Court.

[4] The Supreme Judicial Court, in *Bradlee*, expressly disagreed with the English cases cited by the Wood branch. See *Bradlee* at 120.

[5] The reliance of the Wood branch on other Massachusetts decisions where the stocks were found in the takers is misplaced. See *Ernst* v. *Rivers*, 233 Mass. at 15; *Cammann* v. *Abbe,* 258 Mass. at 429-430; *Old Colony Trust Co.* v. *Lothrop*, 276 Mass. 496, 500-501 (1931); *B. M. C. Durfee Trust Co.* v. *Borden*, 329 Mass. 461, 462-463 (1952). *B.M.C. Durfee Trust Co.* v. *Franzheim*, 349 Mass. 335, 341-342 (1965); *Chapin* v. *Patterson*, 353 Mass. 358, 359-360 (1967). In none of those cases was there specific language in the will or trust, such as was present in *Bradlee*, indicating that the taking in these cases was to be "per stirpes" or "according to the

The judgment is reversed. A new judgment is to be entered instructing the trustee as to the distribution of the remaining trust estate under Article Seven in accordance with this opinion.

*So ordered.*

---

stocks." Nor in these cases did the language of the will as a whole show that such a distribution was intended. Indeed, several of the decisions expressly distinguish themselves from *Bradlee* in just these ways. See e.g. *B. M. C. Durfee Trust Co.* v. *Franzheim, supra* at 342; *Chapin* v. *Patterson, supra* at 360.