******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

FRANCIS T. SCHWERIN, JR., ET AL. *v.*
G. JACKSON RATCLIFFE,
TRUSTEE, ET AL.
(SC 20208)
(SC 20209)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The plaintiffs, potential beneficiaries of two family trusts, sought a judgment
declaring the proper distribution of assets from those trusts. Each trust
contained explicit language that, upon the expiration of the trust term,
the trust principal was to be distributed to the grantor's issue then living,
per stirpes. The plaintiffs claimed that, upon the passing of the last
measuring life, the principal of the trusts should be distributed in six
equal amounts to the six grandchildren of H, the grantor of one of the
trusts, and the son of the grantor of the other trust, and that the refer-
enced distribution will be per stirpes, such that the one-sixth share that
would have gone to any deceased grandchild of H will instead go to
the issue of that grandchild. The plaintiffs filed a motion for summary
judgment, claiming that there was no genuine issue of material fact that
the trusts grant the principal to the grandchildren of H or their families
in equal shares. Certain defendants, other potential beneficiaries of the
trust, also filed motions for summary judgment, claiming that there was
no genuine issue of material fact with respect to the interpretation of
the two trusts and that the court should render judgment declaring that,
at the expiration of the term of those trusts, the principal of the trusts
should be distributed such that each of the three children of H shall be
the head of each stirpe. The trial court denied the plaintiffs' motion
for summary judgment, granted the defendants' motions for summary
judgment, and rendered judgment declaring that, upon the termination
of the two trusts, the corpus of each trust will be distributed in equal
shares to the three children of H, with living descendants of each of
the three children succeeding to the shares of their deceased ancestors.
The plaintiffs and the defendant C filed separate appeals from the trial
court's judgment. On appeal, although the parties generally agreed that
the grantors of the trusts intended a per stirpes distribution, the plaintiffs
claimed that the stirpital roots should begin at the level of the grandchil-
dren, resulting in the trust principal being initially divided into six equal
shares. C claimed that the stirpital roots should be determined once
the trust terms expire and that the roots should be at whatever level
of descendants has members living at the time of expiration. The other
defendants participating in these appeals claimed that the trial court
correctly determined that the stirpital roots should be at the level of
the children, resulting in the trust principal being initially divided into
three equal shares. *Held* that the trial court correctly determined that
the trusts unambiguously provided that the heads of the respective
stirpes should be the grantors' children and, accordingly, properly
granted the defendants' motion for summary judgment and rendered
judgment in their favor: Connecticut case law and the Restatement
(Second) of Property, which provides that, when a gift is made to a
class described as the "issue" of a designated person, in the absence
of additional language or circumstances that indicate otherwise, the
initial division into shares will be on the basis of the number of class
members, whether alive or deceased, in the first generation below the
designated person, supported the conclusion that the grantors' use of
the term "issue" in the trusts at issue indicated that the grantors intended
the trust principal to be divided into equal shares on the basis of the
number of their children, which was the first generation below each
grantor, and that conclusion was consistent with case law favoring an
equal distribution of a grantor's estate among the several branches of
his or her family, which could be accomplished in the present case only
if the trust principal is divided with the three children of H serving as
the stirpital roots, consistent with this state's intestate statutes (§§ 45a-

438 (a) and 45a-437), which provide for a per stirpes plan of distribution and provide for the stirpital roots to be established at the first generation after the decedent, and consistent with the Uniform Probate Code, which provides that, if an instrument calls for property to be distributed "per stirpes," the property must be divided into as many equal shares as there are surviving children of the designated person and deceased children who left surviving descendants; moreover, contrary to the claim of the plaintiffs and C that, because the two trusts both provided for the principal to be distributed to the grantors' issue "then living," meaning that the grantors intended the initial division of each trust to be to the issue living when the trust terminates, the grantors could not have intended for the initial division to be at the level of the three children of H, who were measuring lives of each trust, as the use of the term "then living" did not modify the method of distributing the trust principal but merely conditioned the receipt of a distribution from those trusts on those issue who survive their expiration; furthermore, although the plaintiffs and C relied on Connecticut cases for the proposition that, if a testator excludes the children as beneficiaries under the trust and directs the gifts to the grandchildren, then the children cannot receive the gifts as representatives of their parents, those authorities, which involved trust documents that directed the gift to a particular class or group of persons, rather than to the more general class of "issue," were not applicable to the present case, as the two trusts at issue do not name a particular class to receive the gifts.

Argued September 17, 2019—officially released March 30, 2020*

*Procedural History*

Action for a judgment declaring the proper method for distributing the principal of certain trusts, brought to the Superior Court in the judicial district of Hartford and transferred to the Complex Litigation Docket, where Bessemer Trust Company, N.A., was substituted for the named defendant et al.; thereafter, the court, *Sheridan, J.*, appointed three guardians ad litem to represent the interests of various individuals; subsequently, Tadhg William Campion was added as a defendant; thereafter, the court denied the plaintiffs' motion for summary judgment, granted the separate motions for summary judgment filed by the defendant William Hale Hubbell et al. and by the defendant Harvey Hubbell V et al., and rendered judgment for the defendants, from which the plaintiffs and Tadhg William Campion filed separate appeals. *Affirmed.*

*Brian O'Donnell*, with whom were *John R. Ivimey* and *Mary Mintel Miller*, for the appellants in Docket No. SC 20208 and the appellees in Docket No. SC 20209 (plaintiffs).

*Linda L. Morkan*, with whom was *Andrew A. DePeau*, for the appellee in Docket No. SC 20208 and the appellant in Docket No. SC 20209 (defendant Tadhg William Campion).

*Jonathan J. Meter*, for the appellees in Docket Nos. SC 20208 and SC 20209 (defendant Harvey Hubbell V et al.).

*Steven M. Wise*, pro hac vice, with whom was *David B. Zabel*, for the appellees in Docket Nos. SC 20208 and SC 20209 (defendant William Hale Hubbell et al.).

*John A. Farnsworth*, with whom was *Karen Yates*, for the appellee in Docket Nos. SC 20208 and SC 20209

(substitute defendant Bessemer Trust Company, N.A.).

*Robert B. Flynn*, for the appellee in Docket Nos. SC 20208 and SC 20209 (Michael D. O'Connell, guardian ad litem for the minor, unborn and unascertained descendants of the named plaintiff).

*James K. Robertson, Jr.*, self-represented, with whom was *Brian Henebry*, for the appellee in Docket Nos. SC 20208 and SC 20209 (James K. Robertson, Jr., guardian ad litem for the minor, unborn and unascertained descendants of the defendant Harvey Hubbell V et al.)

*Opinion*

MULLINS, J. The primary issue in these appeals is whether the trial court properly determined the correct generation to serve as the root for the per stirpes distribution of two family trusts. The appeals arise from an action filed by the plaintiffs, Francis T. Schwerin, Jr., and Brenda Hubbell Schwerin, seeking a declaratory judgment regarding the proper distribution of assets from the two family trusts. Each trust contains language that, upon the expiration of the trust term, the trust principal is to be distributed to the grantor's issue then living, per stirpes.[1] The plaintiffs are potential beneficiaries of these trusts and brought this action against the defendants,[2] who are the trustees of the trusts and other potential beneficiaries. The trial court rendered summary judgment for the defendants, and the plaintiffs and the defendant Tadhg William Campion (Campion) filed separate appeals.[3]

On appeal, the plaintiffs assert that the trial court incorrectly concluded that the language of the trust agreements treats the children of the grantors as the heads of the respective stirpes for purposes of distribution of the trust principal. The plaintiffs further assert that the trust agreement provides that the heads of the respective stirpes should, instead, be at the level of the grandchildren. Contrary to the plaintiffs' position, Campion asserts in his appeal that the language of the trusts establishes that the heads of the respective stir pes should be at the highest generational level with a member living at the time the trusts terminate. In response, the other defendants participating in the appeals assert that the trial court correctly determined that the trust instruments unambiguously provide that the heads of the respective stirpes should be the grantors' children. We agree with those defendants and, accordingly, affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. This dispute revolves around the proper interpretation of two inter vivos trusts (Hubbell Family Trusts). One trust was created by Harvey Hubbell III on August 23, 1957, and was amended on October 9, 1963 (Hubbell Trust). The other trust was created by the mother of Harvey Hubbell III, Louie E. Roche, on September 2, 1957 (Roche Trust).

The Hubbell Trust provides that it will expire upon "the death of the last survivor of the grantor [Harvey Hubbell III], his wife Virginia W. Hubbell, his children Harvey Hubbell, Jr.,[4] William [Ham] Hubbell and Elizabeth H. Schwerin, and his grandchildren Lisa Lorraine Hubbell[5] and Francis Timothy Schwerin[6] . . . ." (Footnotes added.)

The Roche Trust provides that it will expire upon "the death of the last survivor of the grantor [Roche], her son Harvey Hubbell,[7] her grandchildren Harvey

Hubbell, Jr., William [Ham] Hubbell and Elizabeth H. Schwerin, and her great-grandchildren Lisa [Lugovich] and Francis Timothy Schwerin . . . ." (Footnotes added.)

Thus, the measuring lives for the Hubbell Family Trusts are as follows: Harvey Hubbell III; Roche, the mother of Harvey Hubbell III; Virginia W. Hubbell, the wife of Harvey Hubbell III; Harvey Hubbell IV, a son of Harvey Hubbell III; the defendant William Ham Hubbell, a son of Harvey Hubbell III; the defendant Elizabeth H. Schwerin, the daughter of Harvey Hubbell III; and the plaintiff Francis T. Schwerin, Jr., and the defendant Lisa Lugovich, the two grandchildren of Harvey Hubbell III who were alive at the time those trusts were created.[8] Accordingly, the Hubbell Family Trusts will expire upon the death of the last survivor of the measuring lives.

Five of the individuals who are the measuring lives are deceased.[9] The plaintiff Francis T. Schwerin, Jr., and the defendants Elizabeth H. Schwerin and Lisa Lugovich are still alive. It is undisputed that the Hubbell Family Trusts will expire upon the death of the last survivor of those three individuals.

The trust language at issue in these appeals is the language that addresses the distribution of the principal of the Hubbell Family Trusts upon expiration. The Hubbell Trust provides in relevant part: "Upon the expiration of the trust term the trustees, subject to the provisions hereinafter contained, shall convey and deliver all property then belonging to the principal of the trust to grantor's issue then living, per stirpes."

The Roche Trust provides in relevant part: "Upon the expiration of the trust term the trustees shall convey and deliver all property then belonging to the trust, including the principal and any undistributed income thereof, absolutely to the issue of the grantor then living, per stirpes, or in default of such issue to the persons who would be entitled to take the same in accordance with the laws of the [s]tate of Connecticut then in force if the grantor had died at the expiration of the trust term, intestate, and a resident of the [s]tate of Connecticut, and the absolute owner of said property."

The plaintiffs brought this declaratory judgment action in the Superior Court, asking the court to resolve the conflict over the proper method for distribution of the trust principal when the Hubbell Family Trusts expire. Specifically, the plaintiffs asked the trial court to declare that, "upon the passing of the last measuring life—i.e., the passing of the last of [Elizabeth H. Schwerin, Francis T. Schwerin, Jr., and Lisa Lugovich]—the principal of the Hubbell Family Trusts will be distributed in six equal amounts to the six grandchildren of Harvey Hubbell III, and the referenced distribution will be per stirpes, such that the one-sixth share that would have gone to any deceased grandchild of Harvey

Hubbell III will instead go to the issue of each such deceased grandchild." The plaintiffs filed a motion for summary judgment, alleging that there was "no genuine issue of material fact that [the Hubbell Family Trusts] grant principal to . . . [the grandchildren of Harvey Hubbell III] or their families in equal shares."

The defendants William Hale Hubbell and William Hale Lyon Alarcon Hubbell (William Hale Hubbell defendants) also filed a motion for summary judgment, asserting that there was no genuine issue of material fact with respect to the interpretation of the Hubbell Family Trusts. They further asserted that the court should render judgment declaring that, at the expiration of the term of the Hubbell Family Trusts, the principal of those trusts should be distributed such that each child of Harvey Hubbell III shall be the head of each stirpe.

The defendants Harvey Hubbell V, Lisa Lugovich, Richard John Lugovich, Stephen Michael Lugovich and John Daniel Lugovich (Lugovich defendants) also filed a motion for summary judgment, claiming that there was no genuine issue of material fact as to any allegations raised in the complaint. They also claimed that, "upon termination of the Hubbell Family Trusts, the corpus of each trust should be divided equally into three shares, which are representative of the three children of Harvey Hubbell III, with living descendants of each of the three children succeeding to the shares of their deceased ancestors . . . ."

The trial court denied the plaintiffs' motion for summary judgment and granted the motions for summary judgment filed by the William Hale Hubbell defendants and the Lugovich defendants. The trial court then rendered judgment in favor of the defendants and declared as follows: "Upon the termination of the August 23, 1957 [Hubbell Trust], as amended on October 9, 1963, and the September 2, 1957 [Roche Trust], by the passing of [the] last measuring life under said trusts, the corpus of each trust will be distributed in equal shares to the three children of Harvey Hubbell III, with living descendants of each of the three children succeeding to the shares of their deceased ancestors." These appeals followed.

We begin by setting forth the standard of review that governs our review of the claims on appeal. "The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached

by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *King* v. *Volvo Excavators AB*, 333 Conn. 283, 290–91, 215 A.3d 149 (2019).

The resolution of these appeals requires us to determine the proper interpretation of substantially similar language in each of the Hubbell Family Trusts. Specifically, the Roche Trust provides that the trust principal shall be distributed "to the issue of the grantor then living, per stirpes . . . ." The Hubbell Trust provides that the trust principal shall be distributed "to grantor's issue then living, per stirpes." All of the parties are in agreement that those two trusts should be interpreted in the same manner. The dispute involves the issue of which generation should serve as the stirpital roots.[10]

"[W]here the manifestation of the settlor's intention is integrated in a writing, that is, if a written instrument is adopted by the settlor as the complete expression of the settlor's intention, extrinsic evidence is not admissible to contradict or vary the terms of the instrument in the absence of fraud, duress, undue influence, mistake, or other ground for reformation or rescission. . . . If a [trust instrument] is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . Where the language of the [trust instrument] is clear and unambiguous, the [instrument] is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a [trust instrument] must emanate from the language used . . . rather than from one party's subjective perception of the terms. . . .

"If, however, the trust instrument is an incomplete expression of the settlor's intention or if the meaning of the writing is ambiguous or otherwise uncertain, evidence of the circumstances and other indications of the transferor's intent are admissible to complete the terms of the writing or to clarify or ascertain its meaning . . . ." (Citations omitted; internal quotation marks omitted.) *Palozie* v. *Palozie*, 283 Conn. 538, 547–48, 927 A.2d 903 (2007). Furthermore, "[i]t is well settled that in the construction of a testamentary trust, the expressed intent of the testator must control. This intent is to be determined from reading the instrument as a whole in the light of the circumstances surrounding the testator when the instrument was executed, including the condition of his estate, his relations to his family and beneficiaries and their situation and condition." (Internal quotation marks omitted.) *Pikula* v. *Dept. of Social Services*, 321 Conn. 259, 268, 138 A.3d 212 (2016).

"The cardinal rule of testamentary construction is the ascertainment and effectuation of the intent of the testator, if that [is] possible. If this intent, when discovered, has been adequately expressed and is not contrary to

some positive rule of law, it will be carried out. . . . The most inflexible rule of testamentary construction and one universally recognized is that the intention of the testator should govern the construction, and this intention is to be sought in the language used by the testator in the light of the circumstances surrounding and known to him at the time the will was executed. . . . In seeking the testator's testamentary intent, the court looks first to the will itself . . . . It studies the will as an entirety. The quest is to determine the meaning of what the [testator] said and not to speculate upon what [he] meant to say . . . ." (Citations omitted; internal quotation marks omitted.) *Hartford National Bank & Trust Co.* v. *Thrall*, 184 Conn. 497, 502, 440 A.2d 200 (1981).

With these principles in mind, we return to the language of the Hubbell Family Trusts. The Roche Trust requires the principal to be distributed "to the issue of the grantor then living, per stirpes . . . ." The Hubbell Trust provides that the trust principal shall be distributed "to grantor's issue then living, per stirpes."

"Per stirpes means literally by roots or stock or by representation. Black's Law Dictionary (5th Ed. [1979]) [p. 1030]. Under a stirpital distribution, each deceased member of one generation is represented by his descendants of the next succeeding generation. When a stirpital distribution is directed, it is necessary to determine who are the heads of the respective stirpes." *Hartford National Bank & Trust Co.* v. *Thrall*, supra, 184 Conn. 505.

It is well established "that, in the absence of words indicating a contrary intent, a will is to be interpreted as intending to distribute an estate per stirpes, and in accordance with the [Connecticut] statute of distributions." *Close* v. *Benham*, 97 Conn. 102, 107, 115 A. 626 (1921). "[T]he per stirpes . . . rule has for two centuries commended itself to the judgment of the community as one of justice, and has been and is the rule applied by the law in [the] case of intestate estate. . . . The statute of distribution governs in all cases where there is no will; and where there is one, and the testator's intention is in doubt, the statute is a safe guide." (Citation omitted; internal quotation marks omitted.) *Heath* v. *Bancroft*, 49 Conn. 220, 223–24 (1881).

Indeed, "we have held in numerous cases that, in the absence of any direction to the contrary, the per stirpes rule of distribution should be adopted. . . . In most of these there was some implication of an intent to make a per stirpes distribution, though no explicit direction to that effect, and in some the unequal consequences of a per capita distribution were pointed out as one of the considerations in favor of adopting the per stirpes rule." (Citation omitted.) *Mooney* v. *Tolles*, 111 Conn. 1, 12–13, 149 A. 515 (1930). In the present case, not only do we presume a per stirpes method of distribution in the absence of any explicit language to the contrary,

but the language in the Hubbell Family Trusts explicitly provides for distribution on a per stirpes basis.

That does not end our inquiry, however. In the present case, although the parties generally agree that the testators intended a per stirpes distribution, they dispute what that means under the circumstances. Specifically, the plaintiffs assert that the stirpital roots should begin at the level of the grandchildren, resulting in the trust principal being initially divided into six equal shares. Campion asserts that the stirpital roots should be determined once the Hubbell Family Trusts expire and that the roots should be at whatever level of descendants has members living at the time of expiration. The other defendants participating in the appeals assert that the trial court correctly determined that the stirpital roots should be at the level of the children, resulting in the trust principal being initially divided into three equal shares.

Having concluded that the Hubbell Family Trusts require per stirpes distribution, we turn back to the language of those trusts to determine the proper generational level at which to locate the stirpital roots. Specifically, we consider what the grantors meant by the use of the term "issue," as used in the operative language of the Hubbell Family Trusts. " 'In construing the word "issue," we have often noted that, in its primary meaning, "issue" connotes lineal relationship by blood.' . . . The word 'will be so construed unless it clearly appears that [it was] used in a more extended sense.' " (Citation omitted.) *Connecticut Bank & Trust Co.* v. *Coffin*, 212 Conn. 678, 685, 563 A.2d 1323 (1989). This court has also recognized that "antilapse statutes generally obtaining in the United States . . . allow a construction of 'issue' in a manner permitting a distribution per capita among the first generation with a per stirpes representation in the next generation . . . ." *Warren* v. *First New Haven National Bank*, 150 Conn. 120, 124–25, 186 A.2d 794 (1962). In other words, the initial division is to be made in as many shares as there are members of the first generation (per capita), and each deceased member of one generation is represented by his or her descendants of the next succeeding generation (per stirpes).

The Restatement (Second) of Property is consistent with our case law. It explains as follows: "If a gift is made to a class described as the 'issue' or 'descendants' of a designated person, or by a similar multigenerational class gift term, in the absence of additional language or circumstances that indicate otherwise . . . (3) the initial division into shares will be on the basis of the number of class members, whether alive or deceased, in the first generation below the designated person." 3 Restatement (Second), Property, Donative Transfers § 28.2, p. 254 (1988). Applying this principle to the language in the Hubbell Family Trusts supports our conclusion that the grantors' use of the term "issue" indicates that the

grantors intended the trust principal to be divided into equal shares on the basis of the number of their children, as that was the first generation below each grantor.[11]

Comment (b) to § 28.2 of the Restatement (Second) further explains: "If a gift is made to the 'issue' or 'descendants' of a designated person, in the absence of additional language or circumstances that indicate otherwise, the initial division of the subject matter is made into as many shares as there are issue, whether living or not, of the designated person in the first degree of relationship to the designated person. Each issue in the first degree of relationship who survives to the date of distribution takes one share of the subject matter of the gift to the exclusion of any of such first degree issue's descendants. The share of an issue of the first degree who does not survive to the date of distribution is divided into as many shares as there are descendants, whether living or not, of that deceased issue who are in the second degree of relationship to the person whose issue are designated. Such issue in the second degree of relationship [who] survive to the date of distribution each take one share resulting from such division to the exclusion of their respective descendants. The share of an issue of the second degree who does not survive to the date of distribution is divided into as many shares as there are descendants, whether living or not, in the third degree of relationship to the designated ancestor who are also descendants of the deceased second degree descendant, etc. This is referred to as a per stirpes plan of distribution." Id., § 28.2, comment (b), p. 255. In the present case, as we explained previously in this opinion, the testators explicitly provided for a per stirpes plan of distribution, and interpreting "issue" as requiring that division to begin with their children is consistent with that express instruction.

We are also guided by the fact that this court has explained that "[j]urisdictions in the United States . . . have tended toward a construction in favor of a per stirpes division and have construed 'issue,' when its meaning is unrestricted by the context, as including all lineal descendants in the order in which they would be entitled, at the death of the ancestor, to take his property under the law of intestate succession." *Warren* v. *First New Haven National Bank*, supra, 150 Conn. 125. Indeed, we have stated that, "[w]hen a conveyance creates a class gift by a limitation in favor of a group described as the issue of B . . . then, unless a contrary intent of the conveyor is found from additional language or circumstances, distribution is made to such members of the class as would take, and in such shares as they would receive, under the applicable law of intestate succession if B had died intestate on the date of the final ascertainment of the membership in the class, owning the subject matter of the class gift." (Internal quotation marks omitted.) Id., 126–27, quoting 3 Restatement, Property § 303 (1), p. 1655 (1940). Therefore, in the

present case, the testators' unqualified use of the term "issue" supports the application of a per stirpes plan of distribution with the stirpital roots at the generation of their children.

In this case, as we previously have noted, the trust instruments explicitly call for a distribution on a per stirpes basis without any other explicit direction. Thus, our resolution of this case requires that we consider the rationale supporting a per stirpes method of distribution because that rationale informs the proper generational level at which to locate the stirpital roots. As this court has explained, when the testator has not expressly provided otherwise, our law favors an equal distribution of the testator's estate "*among the several branches of his family . . . .*" (Emphasis added.) *Stamford Trust Co.* v. *Lockwood*, 98 Conn. 337, 347, 119 A. 218 (1922), overruled in part on other grounds by *Connecticut Bank & Trust Co.* v. *Coffin*, 212 Conn. 678, 693, 563 A.2d 1323 (1989). In the present case, each child represents a branch of the grantor's family. Specifically, the grantor Harvey Hubbell III had three children, namely, William Ham Hubbell, Harvey Hubbell IV, and Elizabeth H. Schwerin. Therefore, there are three branches of that grantor's family. William Ham Hubbell had one child, Harvey Hubbell IV had two children and Elizabeth H. Schwerin had three children. Thus, if the trust principal is divided with the grandchildren serving as the stirpital roots or with the stirpital roots anywhere other than at the level of the children, there will be an unequal distribution of the estate of Harvey Hubbell III among the three branches of his family. That is, the branch of the family representing Elizabeth H. Schwerin would receive the most because she had three children, the branch representing Harvey Hubbell IV would receive the second most because he had two children and the branch representing William Ham Hubbell would receive the least because he had only one child. As this court concluded in *Stamford Trust Co.* "[t]hat a per capita distribution among issue of every degree would . . . result in an unequal distribution of the testator's estate among the several branches of his family, is apparent. On the other hand, a distribution per stirpes among the issue of whatever degree, the issue of each life tenant taking as a class by right of representation, satisfies not only the language of the will and the indicated intent of the testator, but also the policy of our law." *Stamford Trust Co.* v. *Lockwood*, supra, 347.

Such a distribution is also consistent with Connecticut's intestate statutes, which provide for a per stirpes plan of distribution and provide for the stirpital roots to be established at the first generation after the decedent. See General Statutes § 45a-438 (a)[12] ("[a]fter distribution has been made of the intestate estate to the surviving spouse in accordance with section 45a-437, the residue of the real and personal estate shall be distributed equally, according to its value at the time of distri-

bution, among the children, including children born after the death of the decedent . . . and the legal representatives of any of them who may be dead"); see also General Statutes § 45a-439.[13] Therefore, the law of intestate succession in Connecticut supports an interpretation of the language of the Hubbell Family Trusts that provides for an initial division into three equal shares among the three children of Harvey Hubbell III, which is then to be distributed on a per stirpes basis.

Our interpretation of the Hubbell Family Trusts is also consistent with the Uniform Probate Code,[14] which provides in relevant part: "If a governing instrument calls for property to be distributed 'per stirpes,' the property is divided into as many equal shares as there are (i) surviving children of the designated ancestor and (ii) deceased children who left surviving descendants. Each surviving child, if any, is allocated one share. The share of each deceased child with surviving descendants is divided in the same manner, with subdivision repeating at each succeeding generation until the property is fully allocated among surviving descendants." Unif. Probate Code § 2-709 (c) (amended 1993), 8 U.L.A. 316 (2013).

The plaintiffs and Campion assert that the trial court incorrectly concluded that the grantors intended for the stirpital roots to be established at the generational level of the children because the Hubbell Family Trusts both provide for the principal to be distributed to the grantors' issue "then living . . . ." Specifically, Campion asserts that the phrase "then living" is used to modify the term "issue," meaning that the grantors intended the initial division of each trust to be to the issue living at the termination of the trust, and, because all three children of Harvey Hubbell III are measuring lives of each trust, the grantors could not have intended for the initial division to be at the level of the children. We disagree.

The use of the term "then living" does not alter the testators' intention for per stirpes distribution of the trust principal. Instead, the term "then living" is used to identify those who receive a distribution under the Hubbell Family Trusts. In other words, the use of the term "then living" does not modify the method of distributing the trust principal but merely conditions the receipt of a distribution from those trusts on surviving their expiration. See 3 Restatement (Second), supra, § 28.2, p. 254 ("[i]f a gift is made to a class described as the 'issue' or 'descendants' of a designated person, or by a similar multigenerational class gift term, in the absence of additional language or circumstances that indicate otherwise, (1) [a] class member must survive to the date of distribution in order to share in the gift; and (2) such class member in order to share in the gift must have no living ancestor who is a class member"); see also, e.g., *Travis* v. *Wolcottville School Society*, 113 Conn. 618, 631–32,

155 A. 904 (1931) (language in will bequeathing gift to beneficiary " 'if living' " at time of death of testator's wife "conditioned the gift upon the survival of the beneficiary after the death of the testator's wife"). The commentary to the Restatement (Second) explains: "If a gift is made to the 'issue' or 'descendants' of a designated person, in the absence of additional language or circumstances that indicate otherwise, the initial division of the subject matter is made into as many shares as there are issue, *whether living or not*, of the designated person in the first degree of relationship to the designated person." (Emphasis added.) 3 Restatement (Second), supra, § 28.2, comment (b), p. 255.

The appellate courts of this state have not addressed the precise impact that the phrase "then living" has on per stirpes distribution, but we find a Massachusetts Appeals Court case instructive. In *Bank of New England, N.A.* v. *McKennan*, 19 Mass. App. 686, 477 N.E.2d 170, review denied, 395 Mass. 1102, 481 N.E.2d 197 (1985), the court addressed "whether the phrase 'according to the stocks' in [a trust], when applied to the distribution of the trust principal to the testator's 'issue then living,' calls for the stocks to be the three children of the testator . . . or to be the nine grandchildren of the testator . . . ." Id., 688.

The court reasoned that, because the testator had included the term " 'according to the stocks,' " which it interpreted to mean per stirpes, the testator had intended his children to be the heads of the respective stirpes. Id., 688 n.1, 689–91. Accordingly, the court concluded that "the testator provided for an income distribution by which the grandchildren took only proportional shares of what their individual parents had, rather than equal shares." Id., 690. Similar to the Hubbell Family Trusts in the present case, the trust at issue in *Bank of New England, N.A.*, provided for the children to be measuring lives. See id., 687. Therefore, like the children in the present case, the children in *Bank of New England, N.A.*, could never receive gifts under the trust but were still the stirpital roots for the per stirpes division. See id., 691.

It is important to note that the Massachusetts intestate statute would not have provided for a per stirpes distribution but would have provided, instead, that each grandchild take a share of the trust principal per capita. See Mass. Ann. Laws c. 190, §§ 2 through 4 (Law. Co-op. 1981).[15] Nevertheless, the Massachusetts Appeals Court concluded that the testator's use of the phrase " 'my issue living on the quarterly payment days . . . according to the stocks' " was sufficient to rebut the presumption of the state's intestate statute and provide for per stirpes distribution of the trust principal with the children of the testator as the stirpital roots. *Bank of New England, N.A.* v. *McKennan*, supra, 19 Mass. App. 688–90.

In reaching its conclusion, the Massachusetts Appeals Court also explained that its determination that the children should serve as the stirpital roots is consistent with other language in the trust because the terms of the trust did not single out the grandchildren of the testator. See id., 690–91. Specifically, that court explained: "[T]he will as a whole manifests no intention to single out the testator's grandchildren as deserving of equal or special treatment. Indeed, [a]rticle [s]even [of the will] does not even mention the grandchildren individually or as a class. Rather, it expresses itself solely in terms of the testator's 'issue,' who are to receive both the income of the trust while at least one of the testator's children is alive and the principal of the trust upon the death of the last child. Nor is the term 'issue' restricted to grandchildren. To the contrary, by definition in the will, the term includes both 'children' and all 'lineal descendants to the remotest degree.' In view of the testator's omission of any express reference to his grandchildren, which would have been easy to provide had it been desired, it can be inferred that the testator was concerned, not with providing specifically for them, but for his 'issue' as a whole, according to the stocks from which they came, i.e., his children." (Footnote omitted.) Id.

Because the language of the will at issue in *Bank of New England, N.A.*, is substantially similar to the language of the Hubbell Family Trusts, we find the reasoning of that case persuasive. Specifically, like the will at issue in that case, the Hubbell Family Trusts do not single out the testators' grandchildren as the beneficiaries individually, instead providing for the division of the trust principal among the testators' "issue" as a whole.[16] It is noteworthy that the Massachusetts Appeals Court held as it did in *Bank of New England, N.A.*, because its conclusion was contrary to the intestate statute in Massachusetts, which provided for a per capita distribution. See Mass. Ann. Laws c. 190, §§ 2 through 4 (Law. Co-op. 1981). The reasoning of the Massachusetts Appeals Court in *Bank of New England, N.A.*, is even more persuasive in the present case because our conclusion regarding the proper method for distributing the principal of the Hubbell Family Trusts is consistent with the intestate statutes of this state, which would require the children to be the stirpital roots. See General Statutes §§ 45a-438 (a) and 45a-439.

The plaintiffs and Campion also assert that construing the Hubbell Family Trusts such that the children are the heads of the respective stirpes is inconsistent with the terms of those trusts as a whole because they provide for the children and the two grandchildren of Harvey Hubbell III to be measuring lives, and, therefore, the children can never be beneficiaries under the Hubbell Family Trusts. In support of their position, the plaintiffs and Campion point to a number of cases from

this jurisdiction for the proposition that, if a testator excludes the children as beneficiaries under the trust and directs the gifts to the grandchildren, then the children cannot receive the gifts as representatives of their parents. We find these cases inapposite.

In the cases on which the plaintiffs and Campion rely, the trust document directs the gift to a particular class or group of persons, rather than to the more general class of "issue." See, e.g., *Hartford National Bank & Trust Co.* v. *Thrall*, supra, 184 Conn. 499 n.1 ("[u]pon the death of my said children and of my said grandchild said trust shall terminate, and I do then give, devise and bequeath said the rest, residue and remainder of my estate to their children, if any they have, as a class, to be divided among them per stirpes, share and share alike, to them and to their heirs forever" (internal quotation marks omitted)); *Hartford-Connecticut Trust Co.* v. *Beach*, 100 Conn. 351, 356–57, 123 A. 921 (1924) ("the remaining principal of the general share or parcel at the beginning of this [s]eventh article mentioned shall be distributed equally to all my grandchildren and the issue of such deceased grandchildren as may be born during my lifetime, if any, they to take per stirpes and not per capita" (internal quotation marks omitted)). These cases are inapplicable here because the Hubbell Family Trusts do not name a particular class to receive the gifts.

Similarly, the plaintiffs and Campion rely on § 301 of the Restatement of Property to support the position that the stirpital roots should be at the first generational level with members still living when the trust terminates. We disagree.

Section 301 of the Restatement of Property applies "[w]hen a conveyance creates a class gift by a limitation in favor of a group described as 'B and his children,' or as 'B and the children of C,' or as 'children of B and children of C,' or by other words similarly limiting property to one or more named persons plus one or more described groups, or to two or more described groups, and the membership in such class has been ascertained in accordance with the rules stated in §§ 285–299 . . . ." 3 Restatement, supra, § 301, pp. 1640–41. As we have explained, the language in the trusts in the present case makes a gift to the grantors' issue, generally, rather than to a more specific, particular class of people. Therefore, we conclude that § 303 of the Restatement of Property is applicable to the language in the Hubbell Family Trusts because, as previously noted, that section applies "[w]hen a conveyance creates a class gift by a limitation in favor of a group described as the 'issue of B,' or as the 'descendants of B,' and the membership in such class has been ascertained in accordance with the rules stated in §§ 292 and 294–299 . . . ." 3 id., § 303 (1), p. 1655.

Although we agree with the plaintiffs and Campion

that, under the terms of the Hubbell Family Trusts, the children and some of the grandchildren of Harvey Hubbell III who are named as measuring lives can never be beneficiaries under those trusts, that fact does not preclude the children from being the stirpital roots. Indeed, our conclusion is consistent in this regard with that of the Massachusetts Appeals Court in *Bank of New England, N.A.* v. *McKennan*, supra, 19 Mass. App. 688–91, which concluded that the testator's children were the stirpital roots for the per stirpes division, even though they could never receive gifts under the trust.

The plaintiffs and Campion also rely on a number of cases from New York to support the position that the stirpital roots should be at the highest generational level having any members still living at the time the Hubbell Family Trusts terminate. Campion asserts that New York's proximity to Connecticut would make New York law on the subject especially persuasive because attorneys in Connecticut, particularly those practicing in Fairfield county, would be familiar with New York law and would consider it when drafting trusts in Connecticut. We disagree.

First, it is undisputed that the Hubbell Family Trusts explicitly provide that they are governed by Connecticut law. Second, it is well established that New York law differs significantly from Connecticut law regarding per stirpes distribution. The consolidated laws of New York provide in relevant part: "A per stirpes disposition or distribution of property is made to persons who take as issue of a deceased ancestor in the following manner: The property so passing is divided into as many equal shares as there are (i) surviving issue in the generation nearest to the deceased ancestor which contains one or more surviving issue and (ii) deceased issue in the same generation who left surviving issue, if any. Each surviving member in such nearest generation is allocated one share. The share of a deceased issue in such nearest generation who left surviving issue shall be distributed in the same manner to such issue." N.Y. Est. Powers & Trusts Law § 1-2.14 (McKinney 2012). Therefore, New York law explicitly provides that the number of shares in the initial division of an estate is to be based on the number of issue surviving at the time of distribution. This law is wholly inconsistent with Connecticut's intestate statute, which provides that the number of shares in the initial division of an estate, after distribution is made to a surviving spouse, is to be based on the number of children of the decedent, regardless of whether the children are dead or alive. See General Statutes § 45a-438 (a) ("[a]fter distribution has been made of the intestate estate to the surviving spouse in accordance with section 45a-437, the residue of the real and personal estate shall be distributed equally, according to its value at the time of distribution, among the children, including children born after the death of the decedent . . . and the legal representa-

tives of any of them who may be dead").

In addition to the choice of law provisions in the Hubbell Family Trusts, the difference between the per stirpes method of distribution in the applicable New York statute and the method of distribution in the applicable Connecticut statute makes the New York cases cited by Campion inapplicable in the present case. It is axiomatic that, in Connecticut, "in the absence of words indicating a contrary intent, a will is to be interpreted as intending to distribute an estate per stirpes, and in accordance with the [Connecticut] statute of distributions." *Close* v. *Benham*, supra, 97 Conn. 107.

Campion also asserts that the trial court improperly considered Restatement (Second) of Property and Restatement (Third) of Property because neither one was in existence at the time the Hubbell Family Trusts were drafted and, therefore, was not available to the testators or their attorneys. We disagree that reference to these Restatements was improper. Restatements of the law seek to compile and distill the common law that exists. When seeking to ascertain the testator's intent in a particular testamentary instrument, we have never limited our review to only cases decided prior to the execution of the instrument. Indeed, a review of our case law reveals that this court routinely refers to Restatements that were published after the testamentary instrument was executed. See, e.g., *Hartford National Bank & Trust Co.* v. *Thrall*, supra, 184 Conn. 498, 504–505 (citing to volume 3 of Restatement of Property, which was published in 1940, to interpret will executed in 1916); *Warren* v. *First New Haven National Bank*, supra, 150 Conn. 121, 126–27 (citing to volume 3 of Restatement of Property, which was published in 1940, to interpret will executed in 1937). Because Restatements are compilations of the common law, we see no reason to treat them differently. Accordingly, we conclude that it was not improper for the trial court to rely on volume 3 of the Restatement (Second) of Property, which was published in 1988, and volume 1 of the Restatement (Third) of Property, which was published in 1999, to construe the trusts in the present case that were executed in 1957.

On the basis of the foregoing, we conclude that the trial court properly granted the defendants' motions for summary judgment and rendered judgment declaring that, at the expiration of the term of the Hubbell Family Trusts, the principal of those trusts should be distributed such that each child of Harvey Hubbell III shall be the head of each stirpe.

The judgment is affirmed.

In this opinion the other justices concurred.

* March 30, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Under a per stirpes distribution, "each deceased member of one generation is represented by his descendants of the next succeeding generation. When a stirpital distribution is directed, it is necessary to determine who are the heads of the respective stirpes." *Hartford National Bank & Trust*

*Co.* v. *Thrall*, 184 Conn. 497, 505, 440 A.2d 200 (1981).

[2] The original complaint and summons named numerous defendants, including the three former trustees of the two family trusts, G. Jackson Ratcliffe, Andrew McNally IV, and Richard W. Davies. Subsequently, those defendants were substituted for Bessemer Trust Company, N.A. In the first amended complaint, which is the operative complaint, the plaintiffs named the trustee of the trusts, Bessemer Trust Company, N.A., and the following individuals as the defendants: Elizabeth H. Schwerin, Francis Timothy Schwerin, William Ham Hubbell, Blanca Acususo Hubbell, Harvey Hubbell V, Lisa Lorraine Lugovich, Richard John Lugovich, Cynthia Carole Schwerin, William Hale Hubbell, Stephen Michael Lugovich, John Daniel Lugovich, Timothy Hale Schwerin, Mary Anastasia Campion, Seamus Francis Campion, Martin Ambrose Campion, Augustine Lazarus Schwerin, Elizabeth Lorraine Nunez, Clara Antonia Nunez, Alexandra Louie Hubbell, Craig Thomas Schwerin, Brenda Mercedes Nunez, Jennifer Blanca Nunez, Talpa Guadalupe Nunez, William Hale Lyon Alarcon Hubbell, Andrea Haas Hubbell, Nancy Thomas Schwerin, and Arthur R. Regrave as the personal representative of the estates of Harvey Hubbell IV and Anne Edwards Hubbell. After the action was commenced, the trial court appointed three guardians ad litem to represent the interests of minor, unborn or unascertained beneficiaries. While the case was pending before the trial court, the court granted the motion to add Tadhg William Campion as a defendant. We refer to the defendants by name where appropriate and collectively as the defendants.

[3] The plaintiffs and Campion separately appealed from the judgment of the trial court to the Appellate Court, and we transferred those appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1 or § 65-2.

[4] Harvey Hubbell IV is referred to as Harvey Hubbell, Jr., in the Hubbell Family Trusts. We refer to him as Harvey Hubbell IV for clarity.

[5] Although Lisa Lorraine Lugovich is referred to as Lisa Lorraine Hubbell in the Hubbell Family Trusts, we hereinafter refer to her as Lisa Lugovich for consistency.

[6] The Hubbell Family Trusts refer to the plaintiff Francis T. Schwerin, Jr., and not to the defendant Francis Timothy Schwerin.

[7] Although Harvey Hubbell III is referred to as Harvey Hubbell in the Hubbell Family Trusts, we refer to him as Harvey Hubbell III for clarity.

[8] The Roche Trust includes Roche as a measuring life but does not include Virginia W. Hubbell. The Hubbell Trust includes Virginia W. Hubbell but not Roche. Because both Roche and Virginia W. Hubbell are deceased, these differences do not impact our analysis.

[9] The trial court found as follows: Roche died in 1961; Harvey Hubbell III died in 1968; Virginia W. Hubbell died in 1998; and Harvey Hubbell IV died in 2010. In addition, the parties represented in their briefs that William Ham Hubbell died in 2017.

[10] The parties assert and the trial court concluded that the distribution of the principal of both of the Hubbell Family Trusts should occur in the same manner. Although we ultimately agree with the trial court that the "the corpus of each trust will be distributed in equal shares to the three children of Harvey Hubbell III, with living descendants of each of the three children succeeding to the shares of their deceased ancestors," the basis for that conclusion as it relates to the Roche Trust is slightly different from that of the Hubbell Trust. Specifically, the language in the Roche Trust that provides for the corpus to be divided "to the issue of the grantor then living" requires that the first division of that trust principal would be to Roche's one son, Harvey Hubbell III. Because Harvey Hubbell III is no longer alive, at the expiration of the trust, the corpus would be divided into three equal shares with the living descendants of each of the three children of Harvey Hubbell III succeeding to the shares of their deceased ancestors. Moreover, because Harvey Hubbell III was the only child of Roche, this opinion does not distinguish between the issue of Roche and the issue of Harvey Hubbell III, and any reference in this opinion to the children or to the grandchildren of the testators or of the grantors of the Hubbell Family Trusts is to the children or the grandchildren of Harvey Hubbell III. See footnote 11 of this opinion.

[11] We note that the initial division of the Roche Trust is into one share representing 100 percent of the trust principal because Harvey Hubbell III was the only child of Roche. The first true division of that trust principal would be at the level of the children of Harvey Hubbell III, who would each receive a one-third share, with the living descendants of each of the three children succeeding to the shares of their deceased ancestors. See footnote 10 of this opinion.

[12] General Statutes § 45a-438 (a) provides: "After distribution has been made of the intestate estate to the surviving spouse in accordance with section 45a-437, the residue of the real and personal estate shall be distributed equally, according to its value at the time of distribution, among the children, including children born after the death of the decedent, as provided in subsection (a) of section 45a-785, and the legal representatives of any of them who may be dead, except that children or other descendants who receive estate by advancement of the intestate in the intestate's lifetime shall themselves or their representatives have only so much of the estate as will, together with such advancement, make their share equal to what they would have been entitled to receive had no such advancement been made."

[13] General Statutes § 45a-439 provides in relevant part: "(a) (1) If there are no children or any legal representatives of them, then, after the portion of the husband or wife, if any, is distributed or set out, the residue of the estate shall be distributed equally to the parent or parents of the intestate, except that no parent who has abandoned a minor child and continued such abandonment until the time of death of such child shall be entitled to share in the estate of such child or be deemed a parent for the purposes of subdivisions (2) to (4), inclusive, of this subsection. (2) If there is no parent, the residue of the estate shall be distributed equally to the brothers and sisters of the intestate and those who legally represent them. (3) If there is no parent or brothers and sisters or those who legally represent them, the residue of the estate shall be distributed equally to the next of kin in equal degree, and no representatives shall be admitted among collaterals after the representatives of brothers and sisters. (4) If there is no next of kin, the residue of the estate shall be distributed equally to the stepchildren and those who legally represent them. . . ."

[14] The plaintiffs and Campion assert that it was improper for the trial court to rely on the Uniform Probate Code in its analysis. Although the trial court explained that its interpretation of the language in the Hubbell Family Trusts was consistent with the Uniform Probate Code, it did not rely on that code in reaching its conclusion. Furthermore, although we recognize that Connecticut has not adopted the Uniform Probate Code, and that courts of this state are not bound to follow it, it is useful, persuasive authority in this context.

[15] Mass. Ann. Laws c. 190, § 2 (Law. Co-op. 1981), provides: "The personal property of a deceased person not lawfully disposed of by will shall, after the payment of his debts and the charges of his last sickness and funeral and of the settlement of the estate, and subject to the preceding section and to chapter one hundred and ninety-six, be distributed among the persons and in the proportions hereinafter prescribed for the descent of real property."

Mass. Ann. Laws c. 190, § 3 (Law. Co-op. 1981), provides in relevant part: "When a person dies seized of land, tenements or hereditaments, or of any right thereto, or entitled to any interest therein, in fee simple or for the life of another, not having lawfully devised the same, they shall descend, subject to his debts and to the rights of the husband or wife and minor children of the deceased as provided in this and in the two preceding chapters and in chapter one hundred and ninety-six, as follows:

"(1) In equal shares to his children and to the issue of any deceased child by right of representation; and if there is no surviving child of the intestate then to all his other lineal descendants. If all such descendants are in the same degree of kindred to the intestate, they shall share the estate equally; otherwise, they shall take according to the right of representation. . . ."

Mass. Ann. Laws c. 190, § 4 (Law. Co-op. 1981), provides: "Degrees of kindred shall be computed according to the rules of the civil law; and the kindred of the half blood shall inherit equally with those of the whole blood in the same degree."

Mass. Ann. Laws c. 190, §§ 2 through 4 (Law. Co-op. 1981), is now codified as amended at Mass. Ann. Laws c. 190B, § 2-103 (LexisNexis 2011).

[16] Although the Hubbell Family Trusts do single out some of the grandchildren of Harvey Hubbell III as measuring lives, neither of the trusts singles out the grandchildren individually or as a class for purposes of naming beneficiaries.