Salce *v.* Cardello

## JOHN SALCE *v.* JOAN CARDELLO
## (SC 20701)

Robinson, C. J., and McDonald, D'Auria, Ecker and Alexander, Js.

*Syllabus*

The plaintiff, who, along with the defendant, was a beneficiary of a will and a trust executed by their mother, M, appealed to the trial court from the decision of the Probate Court, which declined the plaintiff's request to enforce against the defendant the in terrorem, or no-contest, clauses contained in M's will and trust. The in terrorem clauses provided that, if a beneficiary objected in any manner to any act taken or proposed to be taken in good faith by any fiduciary, or filed any creditor's claim against the estate, that person would forfeit his or her rights as a beneficiary under the respective instrument. After M died, G became the executor of M's estate and the trustee of the trust. Subsequently, the defendant and her attorney became aware of two mistakes that G apparently made in connection with a certain tax return that he had filed on behalf of the estate. Specifically, G mistakenly listed a bank account that belonged solely to the defendant as an estate asset, and he improperly inflated the value of the estate and increased the beneficiaries' tax burdens by failing to include certain deductions. Although the defendant and her attorney brought these errors to G's attention, G declined to amend the tax return or to make the deductions unless the Probate Court instructed him to do so. The defendant then filed with the Probate Court a request for a hearing on those issues, but she later withdrew the request for unknown reasons. Thereafter, the plaintiff filed a complaint in the Probate Court, seeking to enforce the in terrorem clauses, which he alleged the defendant had violated by filing her request for a hearing. The Probate Court determined, inter alia, that the defendant had not violated the in terrorem clauses and ordered G to remove the bank account that belonged to the defendant from the accounting of the estate's assets. The plaintiff appealed to the Superior Court, which conducted a trial de novo and found, inter alia, that the defendant had not violated the in terrorem clauses because she acted in good faith, upon probable cause, and with reasonable justification when she challenged G's actions. Accordingly, the trial court rendered judgment dismissing the plaintiff's probate appeal. On appeal to the Appellate Court, that court affirmed the trial court's judgment, concluding that, although the defendant technically had violated the in terrorem clauses by challenging G's actions, enforcing those clauses would violate public policy. On the granting of certification, the plaintiff appealed to this court.

*Held* that the Appellate Court properly upheld the trial court's judgment dismissing the plaintiff's probate appeal, as the enforcement of the in

348 Conn. 90 SEPTEMBER, 2023 91

Salce *v.* Cardello

terrorem clauses in M's will and trust would violate public policy by interfering with the Probate Court's exercise of its statutorily mandated supervisory responsibilities over the administration of M's estate and its superintendence of G's performance of his statutory obligations as a fiduciary:

It was undisputed that the Appellate Court correctly concluded that the defendant had technically violated the unambiguous language of the in terrorem clauses in M's will and trust when she filed a request for a hearing before the Probate Court to address G's errors in administering M's estate, and, accordingly, this court's analysis focused on whether the law provided the defendant with relief from the in terrorem clauses.

A testator may impose conditions on the vesting of his or her estate, provided the conditions are certain, lawful and not in contravention of public policy, and, although forfeiture clauses that threaten to dispossess a beneficiary who challenges the validity or terms of a will or a trust are generally valid and enforceable, they must be strictly construed against forfeiture, enforced as written, and interpreted reasonably in favor of the beneficiary.

Nonetheless, this court had previously recognized an exception to the general rule of forfeiture when the beneficiary contesting the will or the trust had a reasonable basis for doing so, on the ground that barring all contests on penalty of forfeiture, regardless of whether the forfeiture was based on probable cause, would prevent a court from ascertaining the truth and cause property to devolve in a manner inconsistent with both statutory and common law.

Moreover, this court previously had found a forfeiture provision in a will to be void as a matter of public policy when it conflicted with a statutory right of appeal, and the protection of statutory remedies as a matter of public policy is consistent with case law from other states applying the statutory duty exception to the enforcement of in terrorem clauses, which recognizes that fiduciaries have certain statutory duties and obligations that beneficiaries should be able to enforce, and with the principle in the Restatement (Third) of Trusts that in terrorem clauses should not be enforced to the extent that doing so would interfere with the enforcement or the proper administration of a trust.

In the present case, application of the in terrorem clauses in M's will and trust implicated various statutory obligations and duties, including the defendant's statutory (§§ 45a-98 and 45a-175) right, as a beneficiary, to seek an accounting, G's statutory (§ 45a-233 (d)) obligation, as a fiduciary, to minimize the tax burden of the estate or the trust, and G's statutory (§ 45a-242 (a)) obligation, as a fiduciary, not to mismanage estate assets or to commit waste.

Salce *v.* Cardello

Furthermore, although this court acknowledged that the public policy exception to the enforcement of in terrorem clauses may interfere with its policy of construing a will to ascertain and effectuate the testator's intent, it nevertheless concluded that the testator's prerogative to dispose of his or her property as he or she sees fit must yield to the Probate Court's exercise of its power to protect the estate's assets and emphasized that the public policy exception protects only those challenges to the actions of a fiduciary that are brought in good faith.

This court reasoned that such an exception struck the proper balance between effectuating the settlor's intent to minimize litigation by way of a forfeiture provision and enabling beneficiaries to aid the Probate Court in the exercise of its statutory responsibilities to protect the estate.

In view of the trial court's supported finding that the defendant's challenge to G's conduct was brought in good faith, this court agreed with the Appellate Court's conclusion that G unquestionably had made a mistake when he listed the defendant's bank account as an estate asset and that it would violate public policy to strictly enforce the in terrorem clauses and thereby preclude the defendant from seeking judicial review to correct that mistake, without risking forfeiture, despite the potential impact of such a mistake on the defendant's finances, the assets of the estate, and the accuracy of G's filings with the Probate Court and the state.

(*One justice dissenting*)

Argued April 26—officially released September 26, 2023

*Procedural History*

Appeal from the decision of the Probate Court for the district of Branford-North Branford denying the plaintiff's request to enforce certain provisions of a will and a trust agreement, brought to the Superior Court in the judicial district of New Haven, where the defendant filed a counterclaim; thereafter, the case was tried to the court, *Wilson, J.*; judgment for the plaintiff on the defendant's counterclaim and dismissing the plaintiff's appeal, from which the plaintiff appealed to the Appellate Court, *Bright, C. J.*, and *Elgo* and *DiPentima, Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Kenneth A. Votre*, for the appellant (plaintiff).

Salce *v.* Cardello

*William N. Wright*, with whom was *Michael P. Kaelin*, for the appellee (defendant).

*Opinion*

ROBINSON, C. J. In this certified appeal, we consider the extent to which in terrorem, or no-contest, clauses in will and trust documents are enforceable against a beneficiary who has challenged certain aspects of the performance of a fiduciary, namely, the executor of the will or the trustee of the trust. The plaintiff, John Salce, appeals, upon our grant of his petition for certification,[1] from the judgment of the Appellate Court, which affirmed the trial court's judgment for the defendant, Joan Cardello, dismissing his probate appeal. See *Salce* v. *Cardello*, 210 Conn. App. 66, 68, 82, 269 A.3d 889 (2022). On appeal, the plaintiff principally contends that the Appellate Court incorrectly concluded that enforcement of the in terrorem clauses in the decedent's will and trust agreement against the defendant would violate public policy when she challenged the executor's refusal (1) to remove her personal bank account from the estate's Connecticut estate and gift tax return, and (2) to deduct the outstanding mortgages from the value of the estate on the return. Consistent with this court's venerable decisions in *South Norwalk Trust Co.* v. *St. John*, 92 Conn. 168, 101 A. 961 (1917), and *Griffin* v.

_____

[1] We granted the plaintiff's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly conclude that the defendant had violated the in terrorem clauses in the decedent's will and trust agreement when the defendant challenged the trustee's refusal (1) to remove her bank account from the estate's Connecticut estate and gift tax return, and (2) to deduct the outstanding mortgages from the value of the estate?" *Salce* v. *Cardello*, 343 Conn. 902, 272 A.3d 657 (2022).

(2) "If the answer to the first question is 'yes,' did the Appellate Court correctly conclude that enforcement of the in terrorem clauses in the decedent's will and trust agreement would violate public policy and that the clauses, therefore, were unenforceable as to the defendant's conduct?" Id.

And (3) "[i]f the answer to the second question is 'no,' does the good faith exception to the enforcement of in terrorem clauses apply in this case?" Id.

Salce *v.* Cardello

*Sturges*, 131 Conn. 471, 40 A.2d 758 (1944), because the defendant's actions were based in good faith, we conclude that enforcement of the in terrorem clauses in the present case would violate the public policy embodied by our statutes requiring probate courts to supervise fiduciaries. Accordingly, we affirm the judgment of the Appellate Court.

The opinion of the Appellate Court aptly sets forth the relevant facts, as found by the trial court, and procedural history. "The plaintiff and the defendant are the son and daughter, respectively, of Mae Salce (Mae). Mae was the settlor of the Amended and Restated Mae Salce Revocable Trust Agreement (trust or trust agreement), which was established on June 29, 2005, and amended on April 3, 2008. The principal asset of the trust was Mae's interest in a piece of real property known as 113 Buffalo Bay in Madison (Buffalo Bay). The trust agreement provided that the defendant would serve as the trustee for the trust until Mae died, at which time Attorney Jay L. Goldstein would become the trustee. Pursuant to the terms of the trust agreement, on December 22, 2005, the defendant, acting as trustee of the trust, transferred a one-half interest in Buffalo Bay to herself. The trust agreement further provided that the defendant would receive the other one-half interest in Buffalo Bay at the time of Mae's death. On the same day that Mae amended the trust, she also executed her last will and testament. Consistent with the terms of the trust agreement, article third of the will provides that all of Mae's interest in Buffalo Bay was bequeathed to the defendant. It further provides that, if the defendant predeceased Mae, Mae's Interest in Buffalo Bay would be devised to '[the defendant's] issue, per stirpes or if there shall be no such issue to [the plaintiff] if [the plaintiff] shall survive me, [or] if [the plaintiff] shall not survive me to [the plaintiff's] issue, per stirpes.' In article fourth of her will, Mae

Salce *v.* Cardello

forgave the plaintiff's obligation to pay any outstanding amounts due to her pursuant to a December 22, 2001 promissory note in the principal amount of $700,000.[2] In article seventh of her will, Mae designated the defendant as the executor of her estate.

"Both the trust agreement and the will contain an in terrorem clause providing that, if a beneficiary takes certain actions, he or she forfeits his or her rights as a beneficiary under the instruments. The in terrorem clause in the trust agreement provides in relevant part: 'If [a] beneficiary under this [t]rust [a]greement . . . directly or indirectly . . . (iv) objects in any manner to any action taken or proposed to be taken in good faith by any [t]rustee . . . [and/or] (vii) files any creditor's claim against [the] [t]rustee (without regard to its validity) . . . then that person's right as a beneficiary of this [t]rust [a]greement and to take any interest given to him or her by terms of this [t]rust [a]greement . . . shall be determined as it would have been determined if the person and the person's descendants had predeceased [the] [s]ettlor without surviving issue. . . .' The in terrorem clause in the will likewise provides in relevant part: 'If [a] beneficiary hereunder . . . directly or indirectly . . . (iv) objects in any manner to any action taken or proposed to be taken in good faith by any [e]xecutor or trustee . . . [and/or] (vii) files any creditor's claim against my [e]xecutor (without regard to its validity) or trustee . . . then that person's right as a beneficiary of this [w]ill and any [c]odicil thereto or trust . . . shall be determined as it would have been determined if the person and the person's descendants had predeceased me without surviving issue. . . .'

"Mae died on April 12, 2012. Thereafter . . . Goldstein became the trustee of the trust pursuant to

_____

[2] "The will describes the payee of the promissory note as Mae's deceased husband, John J. Salce." *Salce* v. *Cardello*, supra, 210 Conn. App. 69 n.1.

Salce *v.* Cardello

the terms of the trust, as well as the executor of Mae's estate, after the defendant declined to serve as the executor. While administering the estate . . . Goldstein sent letters to the beneficiaries, including the defendant, which detailed their required contributions for the payment of certain taxes and fees incurred by the estate. The beneficiaries were also permitted to inspect the Form CT-706/709 Connecticut Estate and Gift Tax Return (CT-706) that . . . Goldstein had filed on behalf of the estate. When the defendant reviewed the CT-706, she noticed that a Citizens Bank account that belonged solely to her mistakenly had been listed as an asset of the estate. The defendant's attorney, Alphonse Ippolito, also reviewed the CT-706. In doing so, he realized that . . . Goldstein also had inflated the value of the estate and increased the beneficiaries' tax burdens by failing to deduct two outstanding loans that were secured by mortgages on Buffalo Bay.[3] . . .

"Ippolito raised these apparent errors with . . . Goldstein, who then asked the defendant to 'produce evidence verifying that the income received pursuant to the mortgages was expended in connection with the administration of the trust.' The defendant did so, but . . . Goldstein still refused to amend the CT-706 either to remove the Citizens Bank account or to deduct the outstanding mortgages. . . . Goldstein did, however, indicate to . . . Ippolito that he would amend the return if instructed to do so by the Probate Court. The defendant, on July 30, 2014, filed a request with the Probate Court for a hearing on these issues but later withdrew the request for unknown reasons.

"Thereafter, the plaintiff filed a complaint in the Probate Court [for the district of Branford-North Branford],

[3] "In her role as trustee, the defendant took out two loans that were secured by mortgages on Buffalo Bay so that she could pay for expenses related to the property." *Salce* v. *Cardello*, supra, 210 Conn. App. 70 n.2.

Salce *v.* Cardello

alleging that the defendant's filing of her request for a hearing, and the issues raised therein, violated the in terrorem clauses in both the will and the trust agreement. Specifically, the plaintiff argued that the defendant had violated the in terrorem clauses by (1) filing a creditor's claim against the estate, and (2) challenging . . . Goldstein's refusal to amend the CT-706. Enforcement of the in terrorem clauses as requested by the plaintiff would cause Mae's [bequest] of her one-half interest in Buffalo Bay to the defendant to be nullified and, pursuant to the terms of her [trust], result in that interest being bequeathed to the plaintiff. The plaintiff, on December 17, 2015, also instituted a lawsuit in Superior Court seeking to invalidate . . . Goldstein's December, 2012 transfer by quitclaim deed of the estate's interest in Buffalo Bay to the defendant pursuant to the will and trust. In response to the plaintiff's complaint in the Probate Court, the defendant claimed that the plaintiff had violated the in terrorem clauses by delaying the administration of the estate and by instituting the Superior Court action seeking to invalidate the transfer of the estate's remaining interest in Buffalo Bay to the defendant.

"Following a hearing, the Probate Court concluded that neither the plaintiff nor the defendant had violated the in terrorem clauses. Furthermore, the Probate Court concluded that . . . Goldstein had erred in including the Citizens Bank account in the estate's assets and ordered that it be removed from the accounting." (Footnotes in original.) *Salce* v. *Cardello*, supra, 210 Conn. App. 68–71.

"The plaintiff appealed from the Probate Court's refusal to enforce the in terrorem clauses against the defendant to the Superior Court, pursuant to General Statutes § 45a-186 (b). The defendant then filed a counterclaim in that appeal, alleging that the plaintiff had violated the in terrorem clauses by instituting the

Salce *v.* Cardello

December 17, 2015 action to invalidate . . . Gold-
stein's transfer of the estate's interest in Buffalo Bay
to the defendant pursuant to the will and the trust.

"The [trial court] held a five day trial de novo on
the plaintiff's appeal and the defendant's counterclaim.
Thereafter, the court issued a memorandum of decision,
in which it concluded that neither party had violated
the in terrorem clauses. With regard to the defendant,
specifically, the court concluded that she had not vio-
lated the clauses because she (1) never filed a creditor's
claim against the estate, and (2) acted in good faith,
upon probable cause, and with reasonable justification
when challenging . . . Goldstein's actions in adminis-
tering the estate and the trust, thus excusing any viola-
tions of the in terrorem clauses." (Footnotes omitted.)
Id., 72. Accordingly, the trial court rendered judgment
dismissing the plaintiff's probate appeal, and for the
plaintiff on the defendant's counterclaim. See id., 68,
72 and n.5.

The plaintiff appealed from the judgment of the trial
court to the Appellate Court, claiming, inter alia,[4] that
"the defendant violated the in terrorem clauses when
she challenged . . . Goldstein's refusal (1) to remove
her Citizens Bank account from the estate's CT-706,
and (2) to deduct the outstanding mortgages from the
value of the estate." Id., 77. The Appellate Court agreed
with the plaintiff's argument that "the defendant techni-
cally violated both clauses when she challenged . . .

[4] The plaintiff also claimed on appeal that the defendant had violated the
in terrorem clauses of the will and the trust by filing a creditor's claim
against the estate. See *Salce* v. *Cardello*, supra, 210 Conn. App. 74. The
Appellate Court held that the trial court's finding that there was no creditor's
claim was not clearly erroneous because there was no evidence that the
defendant had ever made a written demand for payment or reimbursement
to Goldstein as contemplated by General Statutes §§ 45a-353 (d) and (e)
and 45a-358 (a). See id., 75–76. The plaintiff does not challenge the Appellate
Court's conclusion in this respect in this certified appeal, and we need not
consider it further.

Salce *v.* Cardello

Goldstein's actions''; id., 78; but relied on this court's decisions in *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 176–77, *Griffin* v. *Sturges*, supra, 131 Conn. 482–83, and *Peiter* v. *Degenring*, 136 Conn. 331, 335, 71 A.2d 87 (1949), along with sister state decisions in *Sinclair* v. *Sinclair*, 284 Ga. 500, 502–503, 670 S.E.2d 59 (2008), and *In re Estate of Wojtalewicz*, 93 Ill. App. 3d 1061, 1063, 418 N.E.2d 418 (1981), to conclude that ''application of the clear and unambiguous language of the in terrorem clauses punishes the beneficiaries of the estate and the trust [insofar as it prevents them] from objecting to any actions of the trustee, including nondiscretionary, ministerial acts. Because such a clause undermines important private and public interests with no corresponding benefit, it violates public policy.'' *Salce* v. *Cardello*, supra, 210 Conn. App. 80–81; see id., 80 (noting ''significant'' and ''important'' interests of beneficiaries and state in ensuring correct tax payments). Thus, the Appellate Court concluded that, ''although the defendant technically violated both in terrorem clauses when she challenged . . . Goldstein's actions in administering the estate and the trust, enforcing the clauses as written would violate public policy.'' Id., 82. Given this conclusion, the Appellate Court declined to decide whether the good faith and probable cause exception articulated in *South Norwalk Trust Co.* v. *St. John*, supra, 176–77, applied in this case ''because the clauses are unenforceable even in the absence of such an exception.'' *Salce* v. *Cardello*, supra, 78. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id., 82. This certified appeal followed. See footnote 1 of this opinion.

We begin with the first certified question, namely, whether the defendant's actions constituted a violation of the in terrorem clauses, which is easily resolved. It is undisputed that the Appellate Court correctly concluded that the defendant had ''technically violated''

Salce *v.* Cardello

the unambiguous language of both in terrorem clauses, which "makes [it] clear that all challenges to any actions taken by . . . Goldstein constitute a violation of the in terrorem clauses," when she "filed an application and request for a hearing before the Probate Court, in which she challenged . . . Goldstein's preparation of the CT-706 . . . ." *Salce* v. *Cardello*, supra, 210 Conn. App. 78–79; see, e.g., *Schwerin* v. *Ratcliffe*, 335 Conn. 300, 309–10, 238 A.3d 1 (2020) (observing that "[t]he cardinal rule of testamentary construction" is to ascertain and effectuate settlor's intent as expressed in language of instrument, particularly if language is clear and unambiguous). Thus, our analysis turns to the second certified question and whether the law provides the defendant some relief from those provisions.

The plaintiff argues with respect to the second certified question that, because the Uniform Probate Code does not govern; see *Schwerin* v. *Ratcliffe*, supra, 335 Conn. 317 n.14; in terrorem clauses are enforceable in Connecticut, which, as the plaintiff points out, protects "the absolute right of a testator to dispose of his [or her] property as he or she sees fit . . . ." The plaintiff contends that the in terrorem clauses in this case did not preclude all court challenges but, instead, barred only those that would challenge the good faith actions of the fiduciary, which "mitigate[s]" the public policy concerns expressed by the Appellate Court as a reason for not enforcing the in terrorem clauses in this case. The plaintiff argues that "[n]o Connecticut case appears to have applied the so-called public policy exception to claims against the good faith actions of the fiduciary" and contends that this court's decision in *Peiter* v. *Degenring*, supra, 136 Conn. 331, on which the Appellate Court relied, does not relate to in terrorem clauses. Ultimately, the plaintiff argues that "[t]he Appellate Court's decision creates an exception to Connecticut's rule [of] enforc[ing] no-contest clauses that has not

Salce *v.* Cardello

previously been adopted in Connecticut . . . [and that does not] appear to be recognized in any other state,'' which ''is inconsistent with Connecticut's public policy and law [of] enforc[ing] the clear terms of a testator's or settlor's documents.''

In response, the defendant contends that the Appellate Court properly held that it would violate public policy for ''a beneficiary [to] be disinherited through the enforcement of an in terrorem clause for raising before the Probate Court and seeking to correct the clear-cut and ministerial errors of the fiduciary in his administration of an estate and a trust.''[5] Relying on *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 176–77, *Griffin* v. *Sturges*, supra, 131 Conn. 482–83, and *Peiter* v. *Degenring*, supra, 136 Conn. 335, the defendant argues that the in terrorem clauses are unenforceable under the circumstances of the present case because their enforcement ''would have the effect of penalizing [her] for seeking to correct . . . Goldstein's mistakes in the preparation of the CT-706,'' as well as for ''objecting to, for example, the discretionary investment decisions by a fiduciary . . . .'' As sources of ''public policy in favor of the correct administration of an estate or a trust by a fiduciary,'' the defendant relies on (1) a beneficiary's right to seek an accounting in the Probate Court under General Statutes §§ 45a-98 and 45a-175,[6]

5 Implicating the third certified question; see footnote 1 of this opinion; the defendant also argues that, ''even if the subject in terrorem clause is not unenforceable as against public policy, the defendant's actions here would be subject to the long recognized good faith exception to the enforcement of in terrorem clauses because her efforts to correct the fiduciary's mistakes were taken in good faith and upon probable cause.'' See *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 176–77. Given our conclusion as to the second certified question, we, like the Appellate Court, need not reach the defendant's arguments as to the third certified question. See also footnote 12 of this opinion.

6 General Statutes § 45a-175 provides in relevant part: ''(a) Probate Courts shall have jurisdiction of the interim and final accounts of testamentary trustees, trustees appointed by the Probate Courts, conservators, guardians, executors and administrators, and, to the extent provided for in this section,

Salce *v.* Cardello

(2) the fiduciary's obligations under General Statutes § 45a-233 (d)[7] to minimize the tax burden of the estate or trust, and (3) a fiduciary's obligation under General Statutes § 45a-242 (a)[8] "not to mismanage estate assets or commit waste." Observing that Goldstein "effectively

---

shall have jurisdiction of accounts of the actions of trustees of inter vivos trusts and agents acting under powers of attorney.

"(b) A trustee or settlor of an inter vivos trust or the successor of the trustee, settlor or his or her legal representative may petition a Probate Court specified in section 45a-499p for submission to the jurisdiction of the court of an account for allowance of the trustee's actions under such trust.

"(c) (1) Any beneficiary of an inter vivos trust may petition a Probate Court specified in section 45a-499p for an accounting by the trustee or trustees. . . ."

General Statutes § 45a-98 (a) (6) provides in relevant part that probate courts, "to the extent provided for in section 45a-175, [may] call executors, administrators, [and] trustees . . . to account concerning the estates entrusted to their charge . . . ."

[7] General Statutes § 45a-233 (d) provides in relevant part: "No discretionary power or authority conferred upon a fiduciary as provided in sections 45a-233 to 45a-236, inclusive, may be exercised by such fiduciary in such a manner as, in the aggregate, to deprive the trust or the estate involved of an otherwise available tax exemption, deduction or credit . . . except as otherwise prescribed by the testator or settlor, or operate to attract or impose a tax upon a settlor or estate of a testator or upon any other person as owner of any portion of the trust or estate involved. . . . The exercise of a power in violation of the restriction contained in this subsection shall render the action by the fiduciary or any other person with regard to that violation void. 'Tax' means a federal, state, whether that of Connecticut, another state or territory of the United States, the District of Columbia or the Commonwealth of Puerto Rico, local, municipal or foreign, whether national, provincial, state, local or municipal, income, gift, estate, generation-skipping, inheritance, succession, accessions or other death tax, duty or excise imposed on the transfer of property at death or by gift. . . ."

[8] General Statutes § 45a-242 (a) provides in relevant part: "The Probate Court having jurisdiction may, upon its own motion or upon the petition of any person interested or of the surety upon the fiduciary's probate bond, after notice and hearing, remove any fiduciary if: (1) The fiduciary becomes incapable of executing such fiduciary's trust, neglects to perform the duties of such fiduciary's trust, wastes the estate in such fiduciary's charge, or fails to furnish any additional or substitute probate bond ordered by the court, (2) lack of cooperation among cofiduciaries substantially impairs the administration of the estate, (3) because of unfitness, unwillingness or persistent failure of the fiduciary to administer the estate effectively, the court determines that removal of the fiduciary best serves the interests of

Salce *v.* Cardello

invited'' her to seek intervention by the Probate Court after "refus[ing] to correct his errors [in the absence of] a court order,'' the defendant emphasizes that application of the in terrorem clauses in the way advocated by the plaintiff would "have the effect of barring the defendant from seeking redress in the courts to correct the fiduciary's mistakes on the [CT-706], namely, the erroneous inclusion of the Citizens [Bank] account and the failure to account for the two loans in the value of the estate.''[9] We agree with the defendant and conclude that the Appellate Court correctly determined that enforcement of the in terrorem clauses in this case would violate public policy.

"An appeal from a Probate Court to the Superior Court is not an ordinary civil action. . . . When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. . . . In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or [common-law] jurisdiction, but of a Probate Court. . . . [When], as in

the beneficiaries, or (4) there has been a substantial change of circumstances or removal is requested by all of the beneficiaries, the court finds that removal of the fiduciary best serves the interests of all the beneficiaries and is not inconsistent with a material purpose of the governing instrument and a suitable cofiduciary or successor fiduciary is available. . . .''

[9] The defendant argues that the plaintiff's reliance on the clause language seeking only to insulate the "good faith'' actions of the fiduciary from challenge is ineffectual in this respect because it "would still prohibit a beneficiary from seeking to correct mistakes made by the fiduciary, such as those made by . . . Goldstein on the CT-706 . . . simply by arguing [that] he was acting in good faith, even though he was objectively mistaken.'' Noting that the trial court found as a factual matter that "the inclusion of the Citizens [Bank] account and the failure to account for the mortgage[s] in the value of the estate were erroneous actions,'' she emphasizes that, "[b]y their very nature, mistakes are often actions that are taken in good faith but are nonetheless wrong. There is still a strong public interest in favor of correcting those mistakes to, for example, ensure that an estate tax return is accurate. This interest remains the same *even if the trustee or executor was acting in good faith at all relevant times.*'' (Emphasis in original.)

Salce *v.* Cardello

the present case, no record was made of the probate proceedings, the Superior Court was required to undertake a de novo review of the Probate Court's decision.'' (Citation omitted; internal quotation marks omitted.) *Hynes* v. *Jones*, 175 Conn. App. 80, 92–93, 167 A.3d 375 (2017), rev'd on other grounds, 331 Conn. 385, 204 A.3d 1128 (2019); see General Statutes § 45a-186 (b) through (d); *Andrews* v. *Gorby*, 237 Conn. 12, 15–16, 675 A.2d 449 (1996); see also *In re Probate Appeal of Harris*, 214 Conn. App. 596, 600–601, 282 A.3d 467 (discussing more limited standard of review set forth in General Statutes § 45a-186b for ''appeals taken under . . . § 45a-186 from a matter heard on the record in the Probate Court'' (footnote omitted)), cert. denied, 345 Conn. 918, 284 A.3d 299 (2022). Because the trial court and the Appellate Court considered issues of law, our review on appeal is plenary. See, e.g., *Hynes* v. *Jones*, supra, 93.

''A testator may impose such conditions as he pleases [on] the vesting or enjoyment of the estate he leaves, provided they are certain, lawful and not opposed to public policy.'' *Peiter* v. *Degenring*, supra, 136 Conn. 335. This includes in terrorem, or no-contest, clauses, which are defined as ''provision[s] designed to threaten one into action or inaction; [especially], a testamentary provision that threatens to dispossess any beneficiary who challenges the terms of the will.'' Black's Law Dictionary (11th Ed. 2019) p. 1258; accord *McGrath* v. *Gallant*, 143 Conn. App. 129, 132 n.1, 69 A.3d 968 (2013). As the Appellate Court recognized, the leading Connecticut decision with respect to in terrorem clauses is this court's 1917 opinion in *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 168, which was a will contest. See, e.g., *Salce* v. *Cardello*, supra, 210 Conn. App. 74, 81. In *South Norwalk Trust Co.*, this court noted that ''[s]ubstantially all authorities agree that a testator may in some cases impose [on] a [beneficiary] a condition

Salce *v.* Cardello

forfeiting his legacy if he contest[s] the validity of the
will.'' *South Norwalk Trust Co.* v. *St. John*, supra, 174;
see id., 174–75 (recognizing distinction drawn by English
courts of equity, but rejected by majority of American
courts, which enforced conditions ''as to legacies of
personal property, but not as to devises of land''). This
court further observed that, because ''the testator may
attach any condition to his gift [that does not violate]
law or public policy, the [beneficiary] must either take
the gift with its conditions or reject it. The disposition
of these authorities has been to sustain forfeiture clauses
as a method of preventing will contests, which so often
breed family antagonisms and expose family secrets
better left untold, and result in a waste of estates through
expensive and long drawn-out litigation.''[10] Id., 175.

Nevertheless, it is black letter law that such in ter-
rorem provisions ''must be strictly construed against
forfeiture, enforced as written, and interpreted reason-
ably in favor of the beneficiary. No wider scope can be
given to the [verbiage] employed than is plainly required;
nor may the court place a strained or overly technical
construction [on] the language. Forfeiture provisions
in a will are to be strictly construed, and forfeiture [is
to be] avoided if possible. Testamentary dispositions
are presumed to vest at the testator's death, and cannot
be divested unless the precise contingency prescribed
by the testator occurs. It is only [when] the acts of the
parties fall strictly within the express terms of the puni-
tive clause of the will that a breach may be declared.''
(Footnotes omitted.) *In re Estate of Westfahl*, 674 P.2d

---

[10] Contemporary authorities continue to echo these considerations sup-
porting the use of in terrorem clauses. See, e.g., *Russell* v. *Wachovia Bank,
N.A.*, 370 S.C. 5, 12, 633 S.E.2d 722 (2006) (The court observed that no-contest
''clauses may protect estates from costly and time-consuming litigation and
minimize the bickering over the competence and capacity of testators, and
the various amounts bequeathed. . . . No-contest clauses may have the
desirable effect of ensuring that the details of a testator's private life are
not made public.'' (Citation omitted; internal quotation marks omitted.)).

Salce *v.* Cardello

21, 24 (Okla. 1983); see, e.g., 80 Am. Jur. 2d, Wills § 1323 (2023) ("[a]s a general rule, such clauses are valid but are construed strictly and without extension beyond their express terms" (footnote omitted)).

In *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 168, this court considered various exceptions to this "general rule of forfeiture . . . ."[11] Id., 175–76. Of particular relevance to this appeal, this court considered the "exception that a contest for which there is a reasonable ground will not work a forfeiture . . . ." Id., 176. The court observed that, although it was a minority view at the time, it was the "better reason[ed]" position because it "rests [on] a sound public policy. The law prescribes who may make a will and how it shall be made; that it must be executed in a named mode, by a person having testamentary capacity and acting freely, and not under undue influence. The law is vitally interested in having property transmitted by will under these conditions, and [no] others." Id. The court posited that "only [those] who have an interest in the will . . . will have the disposition to lay the facts before the court. If they are forced to remain silent, upon penalty of forfeiture of a legacy or devise given them by the will, the court will be prevented by the command of the testator from ascertaining the truth; and the devolution of property will be had in a manner against both statutory and common law. *Courts exist to ascertain the truth and to apply the law to it in any given situation; and a right of devolution [that] enables a testator to shut the door of truth and prevent the*

_____

[11] The court described the first exception as "not an exception," observing that, "[i]f the action of a [beneficiary] is merely one to determine the true construction of the will, or of any of its parts, the action could not be held to breach the ordinary forfeiture clause, for the object of the action is not to make void the will, or any of its parts, but to ascertain its true legal meaning." *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 176. The court deemed this doctrine inapplicable because the probate appeal "did not . . . raise the question of the construction of [the] will." Id.

Salce *v.* Cardello

*observance of the law, is a mistaken public policy.* If, on contest, the will would have been held invalid, the literal interpretation of the forfeiture provision has suppressed the truth and impeded the true course of justice. If the will should be held valid, no harm has been done through the contest, except the delay and the attendant expense.'' (Emphasis added.) Id., 176–77. The court emphasized that ''[t]he effect of broadly interpreting a forfeiture clause as barring all contests on penalty of forfeiture, whether made [upon] probable cause or not, will furnish those who would profit by a will procured by undue influence, or made by one lacking testamentary capacity, with a helpful cover for their wrongful designs.'' Id., 177. Thus, the court reiterated that, given the aid furnished to the court by the good faith challenger, ''[t]he contest will not defeat the valid will, but it may, as it ought, the invalid will.'' Id. ''[When] the contest has not been made in good faith, and upon probable cause and reasonable justification, the forfeiture should be given full operative effect. [When] the contrary appears, the [beneficiary] ought not to forfeit his legacy.'' Id.; see id., 178 (This court deemed the good faith exception inapplicable because ''[t]he facts of record [were] silent as to whether this contest was begun in good faith, and whether there was probable cause and reasonable justification. The stipulated facts [did] not bring the case within this exception.'').

With respect to the public policy issues presented by the second certified question, we find particularly instructive this court's decision in *Griffin* v. *Sturges*, supra, 131 Conn. 471. In *Griffin*, the court first upheld the validity of a will provision that both required the testator's son to ''give up and refrain from the use of intoxicating liquor'' in order ''to receive the income from the entire estate'' and left to the Probate Court the factual determination of whether the son complied with that provision. Id., 480, 482; see id., 482 (emphasiz-

Salce *v.* Cardello

ing duty of "the trustee under the will . . . to account to the Probate Court, which [had] jurisdiction over the settlement of his account"). Significantly, though, this court invalidated that provision to the extent it rendered "the order of the [Probate Court] . . . conclusive and [provided that] *no appeal shall be allowed . . . .*" (Emphasis added.) Id., 482. This court held that "this incidental provision" of the clause was void as a matter of public policy; id., 483; because it was "contrary to the statutes giving a right of appeal from any decree of a Court of Probate to the Superior Court . . . ." (Citation omitted.) Id., 482–83.

Several more recent sister state decisions are consistent with *Griffin*'s protection of statutory remedies as a matter of public policy, particularly insofar as in terrorem clauses directed at challenges to fiduciary conduct implicate public policy concerns different from those directed at document formation; this is particularly so in the trust context of the present case. See D. Gordon, "Forfeiting Trust," 57 Wm. & Mary L. Rev. 455, 508–512 (2015). These cases are consistent with what has been described as "the statutory duty exception" to the enforcement of in terrorem clauses; M. Begleiter, "Anti-Contest Clauses: When You Care Enough To Send the Final Threat," 26 Ariz. St. L.J. 629, 652 n.149 (1994); see id., 652–53; because an "executor has a statutory duty to account that the beneficiaries can and should enforce," with "[o]bjections to the fiduciary's accounting on the ground of mismanagement, delay or other failure not violating a no-contest clause" being "one common example . . . ." Id., 670. The cases are also consistent with § 96 (2) of the Restatement (Third) of Trusts, which provides that "[a] no-contest clause shall not be enforced to the extent that doing so would interfere with the enforcement or proper administration of the trust." 4 Restatement (Third), Trusts § 96 (2), p. 28 (2012); see id., comment (e), pp. 31–32 (describing

Salce *v.* Cardello

relationship between provision, which permits attacks on exercise of trustee's discretion, and in terrorem clauses oriented toward more traditional will contests).

With respect to these statutory duty cases, we deem especially persuasive the Georgia Supreme Court's decision in *Sinclair* v. *Sinclair*, supra, 284 Ga. 500. In *Sinclair*, the court considered whether an in terrorem clause would cause a beneficiary to forfeit his interest under a will by bringing an action for an accounting and the removal of the executor. Id., 501. In addition to strictly construing the clause not to "amount to a contest of the will by objecting to its probate," the court further held that "it would violate public policy to construe the condition in terrorem so as to require the forfeiture of a beneficiary's interest for bringing an action for accounting and removal of the executor." (Internal quotation marks omitted.) Id., 502. The court emphasized that, "[a]fter a will has been admitted to probate, certain duties and obligations are thereupon imposed by law on the named executor. He has no arbitrary powers to avoid the provisions of a will [that] he is appointed to execute, and the provision . . . being considered cannot be construed to confer any such unbridled authority. The executor, therefore, remains amenable to law in all his acts and doings as such, and a beneficiary under the will, in seeking to compel the performance . . . of his duty, will not be penalized for so doing." (Internal quotation marks omitted.) Id., 502–503. The court concluded that "a condition in terrorem cannot make an executor unanswerable for any violations of the will or of the laws governing personal representatives in Georgia. A beneficiary assuredly is empowered to enforce the provisions of a [will], no matter the terms of any in terrorem clause." (Internal quotation marks omitted.) Id., 503.

Similarly, in *In re Estate of Wojtalewicz*, supra, 93 Ill. App. 3d 1061, the Illinois Appellate Court concluded

Salce *v.* Cardello

that the in terrorem clause of a will clearly and unambig-
uously expressed the testator's intent to "[forbid] any
proceeding to challenge any of the provisions of the
will," including its provision naming the executor.
(Emphasis omitted.) Id., 1062. The court concluded,
however, that enforcement of the in terrorem clause
"would violate the law and public policy of [Illinois].
First, it would deprive [the putative beneficiary] of his
statutory right . . . to request the court to deny the
appointment of the executor for the latter's failure to
initiate a proceeding to have the will admitted to probate
within [thirty] days of acquiring knowledge of being
named as executor in the will." (Citation omitted.) Id.,
1063. The court emphasized that "it would violate public
policy to give effect to the in terrorem clause [because]
its enforcement would endanger the assets of the estate.
Courts closely scrutinize an executor's behavior to
[ensure] that the standards of fair dealings and diligence
of an executor toward the estate are adhered to. . . .
It is the duty of the executor to properly manage the
estate and protect it from [wilful] waste. . . . The
[putative beneficiary] sought to deny the appointment
of the executor on grounds that the executor's lengthy
period of inaction and his failure to file proper tax
returns caused the estate to incur substantial penalties."
(Citations omitted.) Id. The court concluded that "a
[beneficiary] under [the] will . . . [could not] be terror-
ized into relinquishing his legacy by any threat of forfei-
ture. Otherwise, he would be forced to stand by silently
while the executor jeopardizes the assets of the estate.
[The court would] not allow this result, because it per-
mits the estate to be subject to waste and thereby dimin-
ishes the desired share of each beneficiary chosen by
the testator under her will." Id., 1064; see *In re Estate
of Ferber*, 66 Cal. App. 4th 244, 253, 77 Cal. Rptr. 2d 774
(1998) ("The power of the court is invoked in probate
matters, at least in substantial measure, to protect the

Salce *v.* Cardello

estate and [to] ensure its assets are properly protected for the beneficiaries. [No-contest] clauses that purport to insulate executors completely from vigilant beneficiaries violate the public policy behind court supervision.''); *In re Estate of Prevratil*, 121 App. Div. 3d 137, 148, 990 N.Y.S.2d 697 (2014) (given narrow construction of no-contest clauses, declining to ''conclude that [the] decedent intended to preclude [the] petitioners from seeking letters of administration in the face of the named fiduciaries' inaction,'' and observing that, ''even if [the] decedent's intent were to prohibit a beneficiary from questioning the conduct of a nominated fiduciary, such a broad [no-contest] clause would be void'' under statutes governing fiduciaries); *Barr* v. *Dawson*, 158 P.3d 1073, 1076 (Okla. Civ. App. 2006) (discussing case law holding that spousal election does not invoke no-contest clause for public policy reasons), cert. denied, Oklahoma Supreme Court, Docket No. SD-103371 (February 27, 2007); see also *Redman-Tafoya* v. *Armijo*, 138 N.M. 836, 848–51, 126 P.3d 1200 (App. 2005) (claims for disinheritance and removal of executor were statutorily authorized and did ''not constitute contests'' for purposes of broad in terrorem clause).

We conclude, therefore, that an in terrorem clause violates public policy when its application would interfere with the Probate Court's exercise of its statutorily mandated supervisory responsibilities over the administration of an estate and its superintendence of the fiduciary's statutory obligations. As the defendant argues, the in terrorem clauses in this case implicate the Probate Court's supervision over the fiduciary via the accounting process under § 45a-175, which may be invoked at the request of a beneficiary. See footnote 6 of this opinion. In connection with that accounting, the Probate Court was called on to consider whether Goldstein had properly discharged his responsibilities to minimize the estate's tax burden under § 45a-233 (d)

Salce *v.* Cardello

and his broader obligation under § 45a-242 (a) not to mismanage estate assets or to commit waste. See footnotes 7 and 8 of this opinion.

We acknowledge the plaintiff's argument that this public policy exception interferes with a different public policy, namely, "enforc[ing] the clear terms of a testator's or settlor's documents." See, e.g., *Derblom* v. *Archdiocese of Hartford*, 346 Conn. 333, 347, 289 A.3d 1187 (2023) ("[the] primary objective in construing . . . [a] will is to ascertain and effectuate [the testator's] intent" (internal quotation marks omitted)). Although we acknowledge that clauses barring review of the fiduciary's actions are different in kind from contests that attack the underlying validity of the will or trust document, consistent with discussion at oral argument before this court, we nevertheless conclude that the testator's prerogative to dispose of his or her property as he or she sees fit must yield to the Probate Court's exercise of its power to protect the assets of the estate, which would be impinged if a beneficiary risks disinheritance by bringing, in good faith, potential tax return errors to the attention of the Probate Court. Indeed, as the plaintiff's counsel acknowledged before this court at oral argument, the defendant permissibly could have avoided these potential disinheritance issues by waiting for a hearing on the accounting, rather than raising the issue more proactively. This amounts to a matter of form that would scarcely justify disinheritance as a matter of public policy, especially because the good faith participation of the beneficiary is an important aspect of facilitating the responsibility of the court under § 45a-175. See *In re Estate of Ferber*, supra, 66 Cal. App. 4th 253–54 (The court acknowledged that it "may have the primary responsibility to monitor an executor's actions" but observed that, "as a practical matter, the courts lack the resources to scrutinize every matter for executor malfeasance. They must rely on

Salce *v.* Cardello

beneficiaries to be aware of the facts and raise cogent points.''). Put differently, the "power of the court is invoked in probate matters, at least in substantial measure, to protect the estate and [to] ensure its assets are properly protected for the beneficiaries. No contest clauses that purport to insulate executors *completely* from vigilant beneficiaries violate the public policy behind court supervision.'' (Emphasis added.) Id., 253.

We emphasize, however, that this statutory duty and public policy exception protects only those challenges to the actions of a fiduciary that are brought in good faith. Consistent with this court's decision in *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 176–77, allowing for enforcement of in terrorem clauses against beneficiaries whose challenges to the actions of the fiduciary are found to be brought in bad faith or frivolously balances effectuating the settlor's intent to minimize litigation with enabling beneficiaries to aid the Probate Court in the exercise of its statutory responsibilities to protect the estate. See *In re Estate of Ferber*, supra, 66 Cal. App. 4th 254 (adopting "a balancing process" to protect salutary features of no-contest clause, including discouraging litigation and protecting the testator's intent, by "enforcing [no-contest] clauses against beneficiaries who attempt to oust the executor with a frivolous challenge,'' while allowing "beneficiaries who believe an executor is engaged in misconduct to bring the potential malfeasance to the court's attention without fear of being disinherited, furthering the public policy of eliminating errant executors''); D. Gordon, supra, 57 Wm. & Mary L. Rev. 463 (proposing burden-shifting scheme that merges probable cause, good faith standard with public policy concerns as "a more coherent and balanced approach to trust forfeiture clauses" that recognizes "the settlor's interest in facilitating a smooth relationship between [his or] her fiduciar[ies] and beneficiaries without forfeiting the precious oversight that

Salce *v.* Cardello

allows trusts to function properly''). But see *In re Estate of Prevratil*, supra, 121 App. Div. 3d 148 (concluding that no-contest clauses precluding challenges of fiduciary's actions are per se void and that such challenges need not be based on probable cause because neither case law nor statutory provisions impose probable cause requirement). Put differently, a finding that a challenge to a fiduciary's action was brought in bad faith or is frivolous means that the statutory duty exception will not, as a matter of public policy, shield the challenging beneficiary from the operation of an applicable in terrorem clause.

Given the trial court's supported finding that the defendant's challenge to Goldstein's filings was brought in good faith, we agree with the Appellate Court's conclusion that "Goldstein unquestionably made a mistake when he listed the defendant's Citizens Bank account as an asset of the estate. In strictly complying with the in terrorem clauses, however, the defendant could not seek judicial review to correct that mistake, without risking forfeiture, despite its potential impact on her finances, the assets of the estate, and the accuracy of . . . Goldstein's filings with the Probate Court and the state of Connecticut. Such a result would violate public policy." (Footnote omitted.) *Salce* v. *Cardello*, supra, 210 Conn. App. 81. We conclude, therefore, that the Appellate Court properly affirmed the judgment of the trial court.[12]

[12] Like the Appellate Court, our conclusion as to the public policy exception means that we do not need to consider the third certified question, which asks us to consider the application of the good faith, probable cause exception discussed in *South Norwalk Trust Co.* v. *St. John*, supra, 92 Conn. 176–77, as an independent basis for relieving the defendant from the application of the in terrorem clauses. The plaintiff's argument that *South Norwalk Trust Co.* is nonbinding dictum leads us to the work of commentators who have suggested that the time is apt for refinement of the law governing such in terrorem clauses, particularly given their relative lack of effectiveness and the increasing transmission of wealth from members of the baby boomer generation to their descendants in coming years, including via the use of nonprobate assets and instruments. See, e.g., M. Begleiter,

348 Conn. 90 SEPTEMBER, 2023 115

Salce *v.* Cardello

The judgment of the Appellate Court is affirmed.

In this opinion McDONALD, ECKER and ALEXAN-DER, Js., concurred.

D'AURIA, J., dissenting. In this certified appeal, the court today holds that, in terrorem clauses, also known as no-contest causes, violate the state's public policy, unless a beneficiary's challenge to a trustee's or executor's actions is in bad faith or frivolous. Specifically, the majority holds that "an in terrorem clause violates public policy when its application would interfere with the Probate Court's exercise of its statutorily mandated

supra, 26 Ariz. St. L.J. 678–79; G. Beyer et al., "The Fine Art of Intimidating Disgruntled Beneficiaries with *In Terrorem* Clauses," 51 SMU L. Rev. 225, 268–69, 274 (1998); R. Domsky, "*In Terrorem* Clauses: More Bark Than Bite?," 25 Loy. U. Chi. L.J. 493, 505 (1994); E. Shaheen, Note, "In Terrorem Clauses: Broad, Narrow, or Both?," 95 Notre Dame L. Rev. 1763, 1782–83 (2020).

Thus, the continuing vitality of that exception, which is now a nationwide majority position modeled on *South Norwalk Trust Co.*; see, e.g., *Parker* v. *Benoist*, 160 So. 3d 198, 204–206 and n.7 (Miss. 2015); *Russell* v. *Wachovia Bank, N.A.*, 370 S.C. 5, 12, 633 S.E.2d 722 (2006); presents an issue "of public policy, and, [i]n areas [in which] the legislature has spoken . . . the primary responsibility for formulating public policy must remain with the legislature." (Internal quotation marks omitted.) *Jobe* v. *Commissioner of Correction*, 334 Conn. 636, 659, 224 A.3d 147 (2020); see also *Butler* v. *Stegmaier*, 77 Va. App. 115, 134–35, 884 S.E.2d 806 (2023) (declining to adopt good faith and probable cause exception to enforcement of no-contest clauses as matter of public policy because "it is the role of the [Virginia] General Assembly to evaluate and adopt or discard particular public policy changes as the elected representatives of Virginians directly accountable to the citizenry"); *EGW* v. *First Federal Savings Bank of Sheridan*, 413 P.3d 106, 111–12 (Wyo. 2018) (noting that Wyoming legislature had "chosen not to incorporate § 3-905 of the Uniform Probate Code," which provides for good faith and probable cause exception, into recently enacted probate code, in declining to apply such exception as matter of common law); K. Blanco & R. Whitacre, "The Carrot and Stick Approach: In Terrorem Clauses in Texas Jurisprudence," 43 Tex. Tech L. Rev. 1127, 1137–38 (2011) (discussing "[the] delicate balance of competing interests and values" that attends formulation and enforcement of rule concerning validity of no contest clauses). We therefore leave to another day—and more aptly to the legislature—the continuing vitality of the good faith and probable cause exception.

Salce *v.* Cardello

supervisory responsibilities over the administration of
an estate and its superintendence of the fiduciary's stat-
utory obligations.'' In my view, absent any pertinent
legislative action, for a supposed interest to qualify as
a ''state public policy'' sufficient to overcome an interest
such as the one implicated here—a testator's right to
impose such conditions as she pleases upon the vesting
or enjoyment of her estate, which this court has consis-
tently upheld—the public interest must be strong,
important, clearly articulated, and dominant. This is
especially so because our statutes provide mechanisms
for the Probate Court to comply with its duty to oversee
fiduciaries. Accordingly, I respectfully dissent.

Initially, I observe that, when asked to exercise our
judicial authority to declare the public policy of the
state, and to declare further that this public policy
trumps otherwise legal actions or relationships, we
have, in other contexts, considered closely—and appro-
priately so—the strength of the public interest we are
being asked to vindicate measured against other public
or private interests at stake. See, e.g., *Priore* v. *Haig*,
344 Conn. 636, 658, 280 A.3d 402 (2022) (weighing public
interest in public participation in public hearing on spe-
cial permit application before town's planning and zon-
ing commission against private interest of protecting
individuals from false statements in determining if pub-
lic policy justified application of immunity to state-
ments made during hearing). We also carefully examine
the sources from which we draw our conclusions about
the supposed public policy of the state. See id.

For example, notwithstanding that contracts of employ-
ment for an indefinite term, at common law, were, and
remain, terminable ''at will,'' without the need for ''a
showing of just cause for dismissal''; *Sheets* v. *Teddy's
Frosted Foods, Inc.*, 179 Conn. 471, 474, 427 A.2d 385
(1980); we have ''sanctioned a common-law cause of
action for wrongful discharge in situations in which the

Salce *v.* Cardello

reason for the discharge involved impropriety 'derived from some important violation of public policy.' '' *Daley* v. *Aetna Life & Casualty Co.*, 249 Conn. 766, 798, 734 A.2d 112 (1999), quoting *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 475. ''[W]e repeatedly have underscored our adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one . . . . Consequently, we have rejected claims of wrongful discharge that have not been predicated [on] an employer's violation of *an important and clearly articulated public policy.*'' (Emphasis added; internal quotation marks omitted.) *Dunn* v. *Northeast Helicopters Flight Services, LLC*, 346 Conn. 360, 371, 290 A.3d 780 (2023). As we recognized in *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 513 A.2d 66 (1986), however, because of ''the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception.'' Id., 680. Said another way, it is not clear in every case precisely what public interest is at stake and, once identified, whether that public interest is sufficiently important or clearly articulated to justify applying the public policy exception to the at-will employment doctrine.

A complication that can arise, when considering whether to invalidate a contractual provision in the name of public policy, is that there may be competing public and private interests. For example, this court has recognized as ''well established that parties are free to contract for whatever terms on which they may agree . . . [although] it is equally well established that contracts that violate public policy are unenforceable.'' (Internal quotation marks omitted.) *Geysen* v. *Securitas Security Services USA, Inc.*, 322 Conn. 385, 392, 142 A.3d 227 (2016). In light of these dueling principles of law, a contract provision violates public policy, and is unenforceable, if it ''negate[s] laws enacted for the

Salce *v.* Cardello

common good or is designed to evade statutory requirements . . . .'' (Internal quotation marks omitted.) Id., 397.

A "specific application" of this "general [common-law] doctrine . . . that a court may refuse to enforce contracts that violate law or public policy" is found in our cases in which a party to a voluntary arbitration agreement asks a court to vacate the arbitration award on the ground that enforcing it would violate public policy. (Internal quotation marks omitted.) *HH East Parcel, LLC* v. *Handy & Harman, Inc.*, 287 Conn. 189, 197, 947 A.2d 916 (2008). "The public policy exception applies only when the award is *clearly* illegal or *clearly* violative of a *strong* public policy." (Emphasis added; internal quotation marks omitted.) *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 271 Conn. 127, 135, 855 A.2d 964 (2004). We have said further in this context that "the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's . . . [award] is limited to situations [in which] the contract as interpreted would violate some *explicit* public policy that is well defined and *dominant*, and is to be ascertained by reference to the laws and legal precedents *and not from general considerations of supposed public interests*." (Emphasis added; internal quotation marks omitted.) Id., 135–36. "[G]eneral notions of the public good, public accountability or the public trust are insufficient grounds for invoking the extremely narrow public policy exception to judicial enforcement of arbitral awards." *New Haven* v. *AFSCME, Council 4, Local 3144*, 338 Conn. 154, 187–88, 257 A.3d 947 (2021).

I would scrutinize with the same rigor as in these other contexts the claimed public policy the defendant, Joan Cardello, advances to invalidate the in terrorem clauses at issue in the present case. In other words, I believe that, for a public interest to constitute a public

Salce *v.* Cardello

policy of such importance as to negate the clear and explicit intent of a testator, as stated in an in terrorem clause, the public interest must be strong, important, clearly articulated, and dominant. This approach is justifiable and logical, in my view, because, in weighing the importance of a probate court's supervision of fiduciaries and in ultimately vindicating this supposed public interest, this court should also be mindful of any competing interests—private or public—that our law has historically protected. If we fail to consider the strength of the competing public and private interests at stake, this court in essence becomes the "roving commission" we so often say we are not, arrogating to ourselves the "general legal oversight . . . of private entities" in the name of vindicating public policy. *TransUnion LLC* v. *Ramirez,* U.S. , 141 S. Ct. 2190, 2203, 210 L. Ed. 2d 568 (2021); see also *CT Freedom Alliance, LLC* v. *Dept. of Education*, 346 Conn. 1, 28, 287 A.3d 557 (2023).

In particular, for more than one century, this court has recognized the "general rule [that] a testator has the right to impose such conditions as he pleases upon a beneficiary as conditions precedent to the vesting of an estate . . . ." (Internal quotation marks omitted.) *DeLadson* v. *Crawford*, 93 Conn. 402, 410, 106 A. 326 (1919); accord *Greenwich Trust Co.* v. *Tyson*, 129 Conn. 211, 218, 27 A.2d 166 (1942); see also *Peiter* v. *Degenring*, 136 Conn. 331, 335, 71 A.2d 87 (1949) ("[a] testator may impose such conditions as he pleases upon the vesting or enjoyment of the estate he leaves, provided they are certain, lawful and not opposed to public policy"). Our courts have "sustain[ed] forfeiture clauses as a method of preventing will contests, which so often breed family antagonisms, and expose family secrets better left untold, and result in a waste of estates through expensive and long drawn-out litigation." *South Norwalk Trust Co.* v. *St. John*, 92 Conn. 168, 175, 101 A. 961 (1917); see also *McGrath* v. *Gallant*, 143 Conn.

Salce *v.* Cardello

App. 129, 132, 69 A.3d 968 (2013) (testator inserted in terrorem clause into will given "history of strife among his children . . . anticipat[ing] that the animosity among the siblings would only escalate after his death"); cf. *Parker* v. *Benoist*, 160 So. 3d 198, 205 (Miss. 2015) ("forfeiture clauses may serve a valuable purpose in deterring 'unwarranted challenges to the donor's intent by a disappointed person seeking to gain unjustified enrichment,' or preventing 'costly litigation that would deplete the estate or besmirch the reputation of the donor,' or discouraging 'a contest directed toward coercing a settlement—the so-called strike suit' "); *Russell* v. *Wachovia Bank*, *N.A.*, 370 S.C. 5, 12, 633 S.E.2d 722 (2006) ("[No-contest] clauses may protect estates from costly and time-consuming litigation and minimize the bickering over the competence and capacity of testators, and the various amounts bequeathed. . . . No-contest clauses may have the desirable effect of ensuring that the details of a testator's private life are not made public." (Citation omitted; internal quotation marks omitted.). There has been no suggestion in the present case that these principles and interests do not apply equally to trusts.

More recently, we have reiterated that "[t]he cardinal rule of testamentary construction is the ascertainment and effectuation of the intent of the testator, if that [is] possible. If this intent, when discovered, has been adequately expressed and is not contrary to some positive rule of law, it will be carried out." (Internal quotation marks omitted.) *Schwerin* v. *Ratcliffe*, 335 Conn. 300, 310, 238 A.3d 1 (2020); see also *Corcoran* v. *Dept. of Social Services*, 271 Conn. 679, 700, 859 A.2d 533 (2004) ("[i]t is well settled that in the construction of a testamentary trust, the expressed intent of the testator must control" (internal quotation marks omitted)). Thus, it is clear that Connecticut law has historically protected a testator's right to control his property while

Salce *v.* Cardello

he or she is living, and by will to direct its use after his or her death, unless to effectuate that intent would violate a positive rule of law. See *Peiter* v. *Degenring*, supra, 136 Conn. 335.[1] One such "positive rule of law" in Connecticut is statutory: namely, that, regardless of any provisions in the will, a surviving spouse may, subject to certain exceptions, elect "to take a statutory share of the real and personal property passing under the will of the deceased spouse" rather than take what the deceased spouse has by will devised or bequeathed to the surviving spouse. General Statutes § 45a-436 (a).[2]

To secure a judicial determination that this competing interest in favor of upholding a testator's stated intent has been overcome—that is, it violates a positive rule of law—I would require a showing of a strong, important, clearly articulated, and dominant public interest that outweighs the private interests in allowing testators to devise their property as they see fit. In the present case, the defendant contends, and the majority agrees, that, when a beneficiary brings a good faith challenge to the actions of a fiduciary, enforcement of the in terrorem clauses at issue contravenes the admin-

---

[1] It has been said that the law "abhors a forfeiture" and that, as the Appellate Court recognized, in terrorem clauses "are disfavored by the courts and thus must be construed strictly to prevent forfeiture." *Salce* v. *Cardello*, 210 Conn. App. 66, 74, 269 A.3d 889 (2022). These are, at best, maxims as opposed to positive rules of law. See *Micek-Holt* v. *Papageorge*, Superior Court, judicial district of Windham at Putnam, Docket Nos. CV-14-6008881-S and CV-15-5006173-S (September 26, 2016) ("court is mindful of the [maxim] 'equity abhors a forfeiture' "), aff'd, 180 Conn. App. 540, 183 A.3d 1213, cert. denied, 328 Conn. 934, 183 A.3d 634 (2018). Like the Appellate Court, the majority does not attempt to arrive at a narrow construction of the clauses at issue to prevent a forfeiture, nor could it given their broad language. Rather, both the Appellate Court and the majority have invalidated the clauses entirely, an altogether different undertaking for which there is no equivalent maxim.

[2] A "statutory share" means "a life estate of one-third in value of all the property passing under the will, real and personal, legally or equitably owned by the deceased spouse at the time of his or her death, after the payment of all debts and charges against the estate." General Statutes § 45a-436 (a).

Salce *v.* Cardello

istrative interests embodied in General Statutes §§ 45a-175, 45a-233 (d) and 45a-242 (a). See footnotes 6–8 of the majority opinion. Specifically, the majority holds that these statutes reflect policies important enough and strong enough to justify the judicial action the court takes today, invalidating in terrorem clauses employed for decades because beneficiaries assist the Probate Court in monitoring the actions of fiduciaries. I lack the majority's confidence that I can divine that this is in fact a sufficiently dominant public policy of our state. Instead, just as the majority would defer to the legislature consideration of whether the application of a good faith, probable cause exception constitutes an independent basis for relieving the defendant from the application of the in terrorem clauses, I am reluctant to declare that these clauses violate public policy.

The majority's survey of the few other jurisdictions that have addressed the issue reveals that some courts have in fact held that these clauses are unenforceable because insulating the fiduciary from challenge violates the policy underlying state statutes requiring court supervision of these fiduciaries. The majority's discussion of these cases is accurate, and I will not repeat it here.

There are cases that take a different approach than the court does in the present case, however. For example, Wyoming courts have held that in terrorem clauses are enforceable, recognizing both a long judicial history of upholding of a testator's clearly expressed intent and the fact that Wyoming's legislature has not adopted the rule the majority in the present case adopts judicially, despite having had a chance to do so. Specifically, in *EGW* v. *First Federal Savings Bank of Sheridan*, 413 P.3d 106 (Wyo. 2018), the plaintiffs claimed that an in terrorem provision was void because, by allowing a minor child's parents to deprive him of property, the provision violated the public policy underlying constitu-

Salce *v.* Cardello

tional provisions protecting minors, providing for due process, and providing access to the courts. Id., 111–12. In rejecting the plaintiffs' claim, the court emphasized its well established precedent upholding "the absolute right of the testator to dispose of his property after death as he sees fit, provided he is legally qualified so to do and acts as the law directs." (Internal quotation marks omitted.) Id., 110. The court explained that "[n]o right of the citizen is more valued than the power to dispose of his property by will. No right is more solemnly assured to him by the law. Nor does it depend in any sense upon the judicious exercise of that right. It rarely happens that a man bequeaths his estate to the entire satisfaction of either his family or friends. The law wisely secures equality of distribution where a man dies intestate, but the very object of a will is to produce inequality. . . . In this country a man's prejudices form a part of his liberty. He has a right to them. He may be unjust to his children or relatives. He is entitled to the control of his property while living, and by will to direct its use after his death, subject only to such restrictions as are imposed by law." (Internal quotation marks omitted.) Id.

The court in *EGW* noted that, because of that policy, the court in *Dainton* v. *Watson*, 658 P.2d 79, 81 (Wyo. 1983), "previously [had] rejected the claim that no-contest clauses are unenforceable as violative of public policy, even [when] a challenge to the testamentary instrument is made in good faith and with probable cause." *EGW* v. *First Federal Savings Bank of Sheridan*, supra, 413 P.3d 110. Specifically, in *Dainton*, the trial court declared a bequest to the defendant forfeited pursuant to the terms of an in terrorem clause in the will. *Dainton* v. *Watson*, supra, 79. The defendant appealed, claiming that the in terrorem clause was invalid because "public policy demands that those who contest wills in good faith and with probable cause to believe that a will is invalid should be protected from strict enforcement of the terms of a no-contest clause"; id., 82;

Salce *v.* Cardello

based on § 3-905 of the Uniform Probate Code, which
provides: "A provision in a will purporting to penalize
any interested person for contesting the will or institut-
ing other proceedings relating to the estate is unenforce-
able if probable cause exists for instituting proceed-
ings." (Internal quotation marks omitted.) Id., 80. The
court in *Dainton* rejected the defendant's argument,
holding that (1) the claim "ignore[d] the overriding pol-
icy of [the] court and the [well accepted] principle else-
where that a testator's intent as determined by the
language in his will is controlling"; id., 82; and, (2) unlike
the legislatures of other states, Wyoming's legislature
had chosen not to incorporate § 3-905 of the Uniform
Probate Code into Wyoming's then recent enactment
of its probate code. Id.; see also *In re Houston's Estate*,
371 Pa. 396, 399, 89 A.2d 525 (1952) ("[I]f a testator
may disinherit his children, he may also condition their
legacies so that the happening of a certain event will
result in their disinheritance. Here . . . the widow was
faced with the unfortunate choice of receiving a small
legacy or causing the children to lose their bequests,
but that, once again, is a question of the wisdom of the
testator and not public policy."); T. Challis & H. Zarit-
sky, State Laws: No-Contest Clauses, p. 2 ("The largest
group of states (22) adopt the Uniform Probate Code
rule and state that no-contest clauses are enforceable,
unless the contest is based on probable cause. Sixteen
of these states have adopted [§] 2-517 and/or [§] 3-905
of the Uniform Probate Code, to this effect. See Alaska,
Arizona, Colorado, Hawaii, Idaho, Maine, Massachu-
setts, Michigan, Minnesota, Montana, Nebraska, New
Jersey, New Mexico, North Dakota, South Carolina,
South Dakota, and Utah. Five more states, Iowa, Kansas,
Maryland, Pennsylvania and Wisconsin, have a similar
rule, but without using the specific language of the [Uniform
Probate Code].") available at http://www.actec.org/assets/

Salce *v.* Cardello

1/6/State_Laws_No_Contest_Clauses_-_Chart.pdf (last visited September 21, 2023).[3]

The two concerns raised by the court in *Dainton* apply equally in the present case. In my view, our state's probate administration statutes, which have existed for decades, in tandem and in harmony with in terrorem clauses, manifest at best a generalized notion of the public good; see *New Haven* v. *AFSCME, Council 4, Local 3144*, supra, 338 Conn. 187–88; and not the strong, important, clearly articulated, and dominant public policy that we should require before acting judicially to overcome the testator's explicit intent. The court's holding today means that the enforcement of in terrorem clauses has been violating public policy since the advent of our current Probate Court system and that the innumerable in terrorem clauses inserted by individuals into wills and trusts for decades—perhaps centuries—are suddenly illegal notwithstanding that this court has "sustain[ed]" them for more than one century "as a method of preventing will contests . . . ." *South Norwalk Trust Co*. v. *St. John*, supra, 92 Conn. 175.

---

[3] Additionally, some state courts have upheld in terrorem clauses as a matter of public policy because they recognize a distinction between challenges to the provisions of the will or trust and challenges to the trustee's or executor's action. See *McLendon* v. *McLendon*, 862 S.W.2d 662, 679 (Tex. App. 1993, writ denied) ("We construe the language of the in terrorem clause to prohibit a beneficiary from contesting the validity of the will or seeking to attach, modify, or impair the validity of the provisions. It does not prohibit a beneficiary from instituting legal action against a [coexecutor] for breach of fiduciary duties. We disagree with [the coexecutor's] contention that the clause applies to any challenge of the [coexecutor's] right to engage in business in partnership form. The right to challenge a fiduciary's actions is inherent in the fiduciary/beneficiary relationship."); *In re Estate of Rimland*, 2003 WL 21302910, *2 (N.Y. Sur. June 3, 2003) ("In terrorem clauses are designed to prevent attacks on the validity of a will and it has been held that they do not come into play where the issue is whether a fiduciary nominated in the will is qualified to serve in that capacity (*In re Estate of Stralem*, 181 Misc. 2d 715, 695 N.Y.S.2d 274 [1999]) or where the issue is whether a legacy to a charity under the will is barred under the law (*In re Estate of Alexander*, 90 Misc. 2d 482, 395 N.Y.S.2d 598 [1977]).").

Salce *v.* Cardello

Moreover, despite various amendments to the statutes governing probate procedures, wills, and trusts in the last decade; see, e.g., Public Acts 2019, No. 19-137 (adopting Connecticut Uniform Trust Code, General Statutes § 45a-499a et seq.); Connecticut's legislature, unlike other state legislatures; see R. Weisbord, "The Governmental Stake in Private Wealth Transfer," 98 B.U. L. Rev. 1229, 1273 n.240 (2018), citing T. Challis & H. Zaritsky, supra, p. 2; never has amended the statutes governing the Probate Court to render in terrorem clauses unenforceable in their entirety or under particular circumstances, even though it has had the opportunity to do so. Specifically, the legislature has not adopted the Uniform Probate Code as a whole or § 3-905 to create an exception for good faith and probable cause. This is telling because the legislature has explicitly adopted particular sections of the Uniform Probate Code, showing that it knows how to do so when it wants to, but has not done so in relation to in terrorem clauses. See *In re Joshua S.*, 260 Conn. 182, 206 n.18, 796 A.2d 1141 (2002) (discussing legislative history of amendment to General Statutes § 45a–596, which explained that amendment "follow[ed] the lead of [Uniform Probate Code § 5-202]" (internal quotation marks omitted); G. Borrelli, "The Appointment of a Neutral Third-Party Conservator in Connecticut: Where Do We Stand?," 26 Quinnipiac Prob. L.J. 156, 175 (2012) ("Connecticut has adopted the [Uniform Probate Code's last resort] option to appointing a conservator as well as the clear and convincing evidence standard"). Nor has this court, until today, relied on as persuasive authority § 96 (2) of the Restatement (Third) of Trusts,[4] which

[4] Comment (e) to § 96 (2) of the Restatement (Third) of Trusts provides in relevant part: "The rule of Subsection (2) provides only that an otherwise enforceable no-contest clause is unenforceable insofar as doing so would inhibit beneficiaries' enforcement of their rights under a trust (whether created by the will or other instrument) or would otherwise undermine the effective, proper administration of the trust. Suits to enforce the duties of trustees, or to determine the proper meaning or effect of the terms of a trust or to enforce those terms, normally have the effect of seeking to

Salce *v.* Cardello

provides that "[a] no-contest clause shall not be enforced
to the extent that doing so would interfere with the
enforcement or proper administration of the trust." See,
e.g., *Ferguson* v. *Ferguson*, 167 Idaho 495, 506, 473 P.3d
363 (2020) (relying on § 96 (2) of Restatement (Third)
of Trusts to hold that in terrorem clause was unen-
forceable).

The majority itself acknowledges that it is for the
legislature to determine whether a good faith and proba-
ble cause exception applies to in terrorem clauses,
allowing beneficiaries to object to a fiduciary's actions
if they do so in good faith and with probable cause.
Although the majority states that it is not deciding the
applicability of the good faith, probable cause exception
by holding that in terrorem clauses are viable only when

ascertain and implement settlor intentions and trust provisions under the
instrument—rather than constituting a 'contest' or challenge to the instru-
ment or its provisions.

"Accordingly, a no-contest clause ordinarily (see Reporter's Note, final
paragraph) is unenforceable to prevent or punish: a beneficiary's petition
for instructions (§ 71, even though, for example, it seeks an interpretation
contrary to the trustee's interpretation—and see further Reporter's Note to
this Comment); a demand for or challenge to a trustee's accounting (§ 83);
a suit to enjoin or redress a breach of trust (§ 95); a petition for removal
of a trustee for unfitness or for repeated or serious breach of trust (§ 37);
a suit alleging that a trustee's particular exercise of discretion or even
'absolute' discretion constituted an abuse of discretion (§ 87); or the like.
Similarly, a beneficiary's allegation that a trustee's misconduct exceeded
the standard of misconduct permissibly protected by an exculpatory clause
(Comments b and c) is not a contest of that provision of the instrument.
See generally § 27 (2) and § 27, Comment b, and Reporter's Note thereto.
See also Restatement Third, Property (Wills and Other Donative Transfers)
§ 8.5, Comment d, on suits to construe, reform, or modify.

"The rule of this Subsection (2) does not prevent enforcement of a no-
contest clause insofar as it would, absent probable cause, exact forfeiture:
(a) for a beneficiary's challenge to the validity of a trust or trust provision
on grounds of incapacity (§ 11), lack of due execution (§§ 17–23), or forgery,
fraud, undue influence, or other wrongful procurement (§ 12); or (b) for a
beneficiary's claim either (i) as a creditor or (ii) as the owner of property
that the settlor intended to include in the trust, provided, in either case,
that the no-contest clause is clearly intended to apply to such a claim." 4
Restatement (Third), Trusts, § 96 (2), comment (e), pp. 31–32 (2012).

Salce *v.* Cardello

a beneficiary's challenge to the fiduciary's actions is not brought in good faith, the majority, in essence, takes this decision out of the legislature's hands.

The majority takes this action by invoking the public interest in the Probate Court's supervision of fiduciaries but fails to explain how the enforcement of in terrorem provisions has hampered this interest in the decades that these kinds of clauses have been quietly coexisting with our statutes governing probate proceedings. The answer may lie in the fact that other statutes provide means for the Probate Court to supervise fiduciaries and have for decades. Although it is true that beneficiaries may assist the Probate Court in monitoring the actions of fiduciaries; see General Statutes § 45a-175 (c) (1) ("[a]ny beneficiary of an inter vivos trust may petition a Probate Court specified in section 45a-499p for an accounting by the trustee or trustees"); the Probate Court's duty and power to supervise fiduciaries are not limited to issues that beneficiaries raise. Rather, it is undisputed in the present case that, eventually, there would have been a final accounting at which time the Probate Court would have been required to review the filings at issue and could have addressed any errors. See General Statutes § 45a-175 (a) (Probate Court "shall have jurisdiction of the interim and final accounts of testamentary trustees"); General Statutes § 45a-177 (a) ("[a]ll conservators, guardians and trustees of testamentary trusts, unless excused by the will creating the trust, shall render periodic accounts of their trusts signed under penalty of false statement to the Probate Court having jurisdiction for allowance, at least once during each three-year period and more frequently if required by the court or by the will or trust instrument creating the trust"); General Statutes § 45a-286 ("[a]ny court of probate shall, before proving or disapproving any last will and testament, or codicil thereto, hold a hearing thereon, of which notice, either public or per-

Salce *v.* Cardello

sonal or both, as the court may deem best, has been
given to all parties known to be interested in the estate,
unless all parties so interested sign and file in court a
written waiver of such notice, or unless the court, for
cause shown, dispenses with such notice"). Addition-
ally, although our statutes allow beneficiaries to raise
challenges to the actions of a trustee or executor, they
also allow probate courts to challenge and penalize
trustee or executor misconduct on their own motion.
See General Statutes § 45a-242 (a) ("[t]he Probate Court
having jurisdiction may, upon its own motion . . .
after notice and hearing, remove any fiduciary"); Gen-
eral Statutes § 45a-98 (a) (6) (Probate Court, "to the
extent provided for in section 45a-175, [may] call execu-
tors, administrators, trustees . . . to account concern-
ing the estates entrusted to their charge"). Thus,
contrary to the majority's contention, in terrorem
clauses do not allow testators to "shut the door of truth
and prevent the observance of the law . . . ." (Internal
quotation marks omitted.)

The in terrorem clauses at issue in the present case
in particular provide another means for the Probate
Court to supervise fiduciaries. These clauses explicitly
contemplate actions by the beneficiary that would not
implicate these clauses. Specifically, both clauses pro-
hibit a beneficiary from objecting to the fiduciary's
actions but only so long as the fiduciary has taken
those actions in good faith.[5] Thus, if the fiduciary in

---

[5] The in terrorem clause in the trust agreement provides in relevant part:
"If [a] beneficiary under this [t]rust [a]greement . . . directly or indirectly
. . . (iv) objects in any manner to any action taken or proposed to be *taken
in good faith by any [t]rustee* . . . [and/or] (vii) files any creditor's claim
against [the] [t]rustee (without regard to its validity) . . . then that person's
right as a beneficiary of this [t]rust [a]greement and to take any interest given
to him or her by terms of this [t]rust [a]greement . . . shall be determined
as it would have been determined if the person and the person's descendants
had predeceased [the] [s]ettlor without surviving issues . . . ." (Empha-
sis added.)

The in terrorem clause in the will likewise provides in relevant part: "If
[a] beneficiary hereunder . . . directly or indirectly . . . (iv) objects in any

Salce *v.* Cardello

the present case did not take a defensible position on the inclusion of the allegedly improper information in the tax documents, the in terrorem clauses would not protect the fiduciary against action by the beneficiary.

But the clauses also contemplate that the executor or trustee might make mistakes or that there might be good faith disagreements over actions the executor or trustee might undertake. Nonetheless, it is clear from the language of the clauses that the testator intended for the determinations of the executor or trustee, absent bad faith, to be the end of the matter. This result would not be so unusual. Under our various standards of review, our courts are required under certain circumstances to tolerate the mistakes of other denominated decision makers, even when the court itself would have made different findings or reached different conclusions. See, e.g., *McCann* v. *Dept. of Environmental Protection*, 288 Conn. 203, 217, 952 A.2d 43 (2008) ("[F]actual errors do not constitute grounds for vacating the arbitrator's decision. . . . [T]he arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the [ground] that . . . the interpretation of the agreement by the arbitrators was erroneous." (Citation omitted; internal quotation marks omitted.)).

In my view, enforcing the in terrorem clauses in this case implicates no issues of public importance. Rather, the facts of the present case illustrate how broadly applying a generalized—and in this case, at best, administrative—interest in the name of "public policy" consti-

_____

manner to any action taken or proposed to be *taken in good faith by any* [*e*]*xecutor or trustee* . . . [and/or] (vii) files any creditor's claim against my [e]xecutor (without regard to its validity) or trustee . . . then that person's right as a beneficiary of this [w]ill and any [c]odicil thereto or trust . . . shall be determined as it would have been determined if the person and the person's descendants had predeceased me without surviving issue. . . ." (Emphasis added.)

Salce *v.* Cardello

tutes an unwarranted intrusion on private interests. This is not a case involving a beneficiary who acted as a whistle-blower, shedding light on scandalous or improper behavior by a fiduciary. Rather, the defendant, as the single beneficiary of nearly the entire estate of the decedent, challenged the executor's filing of an allegedly inaccurate tax return. Describing the supposed public policy at stake as "the state's interest in receiving accurate tax filings and payments''; *Salce* v. *Cardello*, 210 Conn. App. 66, 80, 269 A.3d 889 (2022); or the fiduciary's actions as "endanger[ing] the interests of the beneficiaries or the estate,'' dresses up what is essentially a dispute about how much the defendant would receive from the estate. Id., 81. Perhaps the fiduciary's actions resulted in the estate's overpayment of taxes and therefore, perhaps, in turn, reduced the defendant's inheritance. As far as I can see, no state interest justifies voiding previously valid in terrorem clauses on the ground of public policy. The testator expressly stated her intent that beneficiaries should not contest the actions of the executor or trustee and thereby waste time and money on such a dispute.

That this is fundamentally a private matter not implicating a strong, important, clearly articulated, and dominant public policy is made even more clear by the fact that the testator originally appointed the defendant the executor of her estate. As the executor, the defendant would have been the one to file the tax documents at issue and, presumably, would have insisted on including what, in her view, was the accurate information. Instead of being personally involved in filing the tax documents, however, the defendant declined to take on the executor role her mother had asked her to, instead deciding to second-guess determinations the executor made in his role that might be against her interest. By the terms of the trust and will, that is exactly what her mother did not want. I fail to see a public interest strong enough,

Salce *v.* Cardello

clear enough, and important enough to overcome the testator's own interest in placing a condition on the distribution of the trust's proceeds to any and all beneficiaries, either to prevent family strife or to prevent dissipation of the estate.

Accordingly, I respectfully dissent.